# Clark *against* Jack.

A loan of personal property, subject to be turned into a sale by compliance with certain conditions, does not vest in the bailee such an ownership as subjects the property to levy and sale upon an execution for his debt.

WRIT OF ERROR to the common pleas of *Jefferson* county.

William Jack against William Clark, J. G. Clark and William Rodgers. This was an action of trespass for taking and selling a law library, the property of the plaintiff.

The library at one time belonged to C. J. Durham, against whom L. B. Durham obtained a judgment and execution, and levied upon the library, and sold and purchased it in January 1835. L. B. Durham then sold the library to William Jack, the plaintiff, who entered into the following agreement with R. Arthurs and C. J. Durham.

" Articles of agreement made and concluded, this 4th day of June, in the year of our Lord 1836, between William Jack of the one part and Richard Arthurs and Cephas J. Durham of the other part, witnesseth, that, in consideration of 145 dollars paid to Lewis B.

[Clark v. Jack.]

Durham for the said Jack, in hand, by the said Arthurs and Dur-
ham, the said Jack agrees to sell, two years from this date, unto the
said Arthurs and Durham all of that law library which the said
Jack bought of Lewis B. Durham; and the said Arthurs and Dur-
ham agree to pay a certain judgment bond in which the said Jack,
Arthurs and Durham are severally and jointly bound unto the said
L. B. Durham for the sum of 200 dollars, with interest, which pay-
ment shall be in full satisfaction for the said books. And further,
the said Jack agrees to let the said Arthurs and Durham have the
use of the said books till that time, and the said books not to be
taken out of Brookville, Jefferson county."

Richard Arthurs, sworn, said, "William Clark, J. G. Clark and
William Rodgers, on the 1st of September 1836, took the books out of
our office. I forbid them. When the books were sold, Mr Jack forbid
the sale; said the books were his. There was no money paid by
Mr Jack to L. B. Durham only what I paid for him. I paid it for
C. J. Durham and myself: he and I gave a note for 45 dollars, and
I gave him a note on Robert P. Barr for 103 dollars, 4 or 5 dollars
over 100 dollars; L. B. Durham took the note; Barr was to settle 100
dollars, and was to pay me the balance over 100 dollars. I got the
books in L. B. Durham & Heath's office. They had them there
from a former sale; Mr Jack never had possession of the books; Mr
Jack got Mr Fullerton to assist me in bringing up the books from
L. B. Durham & Heath's office. We retained the possession there
till levied upon by the sheriff. C. J. Durham and I in partnership;
by me paying this money I got in partnership. Mr Jack had not
the possession of the books after they came to our office till levied
upon. When Jesse Clark took the books I told him to take a sche-
dule, and stood by while he took it. The next day after the agree-
ment of the 4th of June 1836 we took the books up to our office;
two or three persons assisted in carrying books up. Mr Jack scolded
me for not beating the officers off; they came in when the office was
open."

The plaintiff then called Mr Buffington, who proved the value
of the books.

The defendants gave in evidence a judgment of William Rodgers
against C. J. Durham for 264 dollars 11 cents; a *fieri facias* issued
upon it; a levy upon the library by William Clark, who was the
sheriff; and a sale for 263 dollars 96 cents.

The defendants contended that the plaintiff never had such an
ownership and possession of the property as would enable him to
maintain this action; and that if he had, he had parted with it to
Arthurs and Durham by the agreement of the 4th of June 1836.

The court below (Eldred, President) was of opinion that the plain-
tiff was entitled to recover, and so instructed the jury, who found
accordingly.

The errors assigned were:

1. That the court instructed the jury that the agreement was a

[Clark v. Jack.]

case of bailment, with a superadded agreement to vest the title in the bailees when they should pay a sum of money.

2. In deciding that the books were not liable to execution by the creditor of C. J. Durham, inasmuch as he had contributed nothing to the purchase.

3. In deciding that the plaintiff can sustain his action in the present form.

4. In deciding that if the plaintiff ever was the owner of the books, he had such an interest as to entitle him to recover.

*C. A. Alexander* and *Buffington,* for plaintiff in error.

*M'Calmont,* contra, cited, 2 *Penns. Rep.* 478; 3 *Camp.* 187; 8 *Johns. Rep.* 432; 7 *Term Rep.* 9; 15 *East* 607.

PER CURIAM.—This, so far from being a case of retained possession, is one in which delivery preceded the sale. Properly speaking, there was not a sale, but a contract to sell at a future day; and the delivery in the meantime was a loan subject to be turned into a sale by compliance with certain conditions. The plaintiff had received the possession as a purchaser, and it cannot be denied that the property had been vested in him. The consideration of his contract to sell to his bailees was their assumption, as principals, to pay his debt contracted for the purchase money. He had, in fact, purchased for their accommodation. That, however, was an arrangement to which his own vendor was not a party, and did not extinguish the original liability to him. The plaintiff continued to be debtor as to his vendor, and why not owner as to his bailees and their creditors. He was so by his contract of purchase; and by his contract to sell he was to cease to be so only at a time named. There was no touch of fraud in this; and the title must be taken to have been according to the ostensible purport of the contract. The transaction was a bailment with a contingent contract to sell, on the principle of Myers *v.* Harvey, 2 *Penns. Rep.* 481. The plaintiff was, therefore, entitled to recover.

Judgment affirmed.