IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## WESTERN DISTRICT—PITTSBURGH 1865.

---

### Rowe *versus* Sharp.

1. Sharp, by writing, "let" to Goff two billiard-tables for nine months, Goff to use them at his place of business, pay a certain sum for their use, and at the end of the term to redeliver them, and if then Goff had complied with the covenants of the agreement, Sharp was to make him a bill of sale of the tables, the consideration for which was the sum to be paid for their use. *Held*, that this was a bailment for use of the tables, with provision for sale in case of payment of the price.

2. Such a contract can be enforced even against the creditors of the bailee.

3. Whilst the tables were in the possession of Goff, he delivered them as indemnity to Rowe, who had become his surety. Rowe, knowing of the agreement with Sharp, and after the issuing of a replevin by Sharp against Rowe, Goff executed a bill of sale of the tables to Rowe and Fero, a creditor. *Held*, that Sharp was entitled to recover in the replevin.

ERROR to the Court of Common Pleas of *Erie county*.

This was an action of replevin, in which William J. Sharp was the plaintiff, and Jonathan E. Rowe the Defendant, and was for two billiard-tables and fixtures.

Sharp, the plaintiff below, was a billiard-table manufacturer in the city of New York. On the 13th November 1863, one Charles A. Goff agreed to purchase from him two billiard-tables and fixtures, for $750, and then paid on account $200, of which this bill was given in evidence by the defendant:—

(26)

[Rowe v. Sharp.]

" New York, Nov. 13th 1863.

" Mr. Chas. A. Goff bought of Wm. J. Sharp, Billiard-Table Manufacturer, No. 148 Fulton street,

" 2 Rosewood Billiard-Tables, at $375, . . . $750
              " By cash, . . . . . 200
                                            ————
                                            $550

The tables and fixtures were not then delivered to Goff, and on the 16th of the same month he and Sharp entered into the following agreement:—

" This indenture, made this sixteenth day of November, one thousand eight hundred and sixty-three, between William J. Sharp, of the city of New York, party of the first part, and Charles A. Goff, of Union Mills, State of Pennsylvania, the party of·the second part,

" Witnesseth, That the said party of the first part hath let, and by these presents doth let, unto the said Charles A. Goff, the party of the second part, Two Rosewood ·Slate Bed Billiard-Tables, with the usual fixtures, for the term of nine months from date, and for the sum of Five Hundred and Fifty Dollars ($550), to be paid in the following manner, namely: One hundred and fifty dollars on the sixteenth day of February 1864; two hundred and fifty dollars on the sixteenth day of May following, and one hundred and fifty dollars on the sixteenth day of August, 1864, making in the aggregate five hundred and fifty dollars.

" And it is further agreed by and between the parties to these presents, that if default shall be made in the payment of the first or any of the above-named instalments or payments, then it shall be lawful for, and the said party of the first may re-enter into possession of said tables and property, take away, repossess, and enjoy the same as though these presents were not made.

" And the said party of the second part does ·covenant and agree that the said tables shall be taken to his place of business, in Union Mills, Pennsylvania, and there held and kept, and not removed therefrom without the written consent of the party of the first part thereto first had and obtained; and at the expiration or sooner determining of the said term he will quit and surrender the said tables in as good condition as reasonable wear and use will permit.

" And the said party of the first part doth hereby covenant and agree that the said party of the second part, on paying the above specified instalments, and performing the covenants aforesaid, shall and may peaceably and quietly have, hold, and enjoy the said tables for the said term.

" And the said party of the first part doth hereby covenant, promise, and agree to and with the said party of the second part,

[Rowe *v.* Sharp.]

that if the said party of the second part shall well and truly keep the covenants herein made, and shall make no default in the payment of aforesaid instalments as the same shall become due and payable, and this lease shall not be determined by. mutual consent sooner or otherwise, that he, the said party of the first part, will make, execute, and deliver to the said party of the second part a good and sufficient bill of sale for said tables, the consideration whereof shall be the amount of the above-named payments received for the said term, making in all the sum of five hundred and fifty dollars.

" And the said party of the second part does hereby covenant and agree to keep the said tables insured against loss or damage by fire, during the continuance of this lease, in the sum of at least five hundred dollars, in a good and incorporated company, approved of by the said party of the first part, and assign the policy or certificate thereof to the said party of the first part, and in default thereof the said party of the first part may effect such insurance, and the premium so paid for effecting the same shall be a lien on the said tables, added to the above-named amount, and be collected as the same."

Upon the execution of this agreement, the tables, &c., were delivered to Goff, who took them to his place of business, as stipulated.

Whilst the tables were in Goff's possession he was arrested, and Rowe, February 12th 1863, entered into recognisance for his appearance at court. As indemnity to Rowe, Goff delivered the tables to him at the time.

There was evidence that whilst Rowe was removing the tables he was informed of the manner in which Goff held them.

On the 7th March Sharp issued a replevin against Rowe for the tables; next day Goff executed a bill of sale of them and some other articles to Rowe and one Fero, who was a creditor of Goff's, for the nominal price of $543, the consideration being Rowe's security and the debt to Fero, the amount of which did not appear.

The defendant claimed the property, and gave a claim property bond.

On the trial, the defendant submitted to the court the following points :—

1. That the contract between plaintiff and C. A. Goff, offered in evidence, is a contract of sale of the tables in controversy by plaintiff to Goff—vesting the property in him, which he had a right to transfer, by sale or otherwise.

2. That if the jury find that the defendant held the tables as security for becoming bail for the appearance of Goff in the Court of Quarter Sessions of this county, and that he was liable to be damnified on account of being such bail, he has such a special

[Rowe.*v.* Sharp.]

property in such tables as will prevent a recovery by plaintiff in this case.

The court (Derrickson, A. J.), charged the jury that, "from an unsigned bill of purchase it would seem as if Goff had bought the billiard-tables in question of Sharp on 13th November 1863 for $750, on which there is a credit marked of $200, but on the 16th following a written contract was executed by them, by which Sharp leased the tables to Goff for nine months at a rent of $550" (stating the terms in detail). "If the terms of the lease should be complied with, Sharp was to make out a bill of sale of the tables to Goff. They were taken by Goff to his house, but he made no payment as contemplated by the lease, and getting into some criminal difficulty, he pledged the tables to Rowe to indemnify him as bail for his appearance at court. Goff sold the articles, one-half to Rowe and the other half to Fero, a creditor of his, both of them having a knowledge of the lease of the property to Goff, and they were taken from Goff's to some other place, probably the defendant's. If the facts were as thus stated, we should have to refuse an affirmative answer to the defendant's two propositions. The mere liability of Rowe as bail, and especially if not injured thereby, would not entitle him to hold the property from Sharp, if the terms of the lease had been violated by Goff, nor would his and Fero's subsequent purchase, with this knowledge of the manner in which the other held it, give them any additional or greater right to hold it from the lessee. * * * If the evidence is credited by the jury, the plaintiff is entitled to recover back his property."

The defendant excepted to the charge of the court, and the jury having found for the plaintiff $561.46, the defendant brought the case into this court, and assigned the following errors:—

1. The court erred in saying to the jury, "Goff sold the articles, one-half to Rowe and the other half to Fero, a creditor of his, for $550, *both of them having a knowledge of the lease of the property to Goff*."

2. The court erred in not answering defendant's first point in the affirmative.

3. The court erred in answering defendant's second point in the negative.

3. The court erred in saying to the jury, "the mere liability of Rowe as bail, and especially if not injured thereby, would not entitle him to hold the property from Sharp if the terms of the lease had been violated by Goff."

5. The court erred in charging the jury as follows: "Nor would his" (Rowe's) "and Fero's subsequent purchase with this knowledge of the manner the other held it, give them any additional or greater right to hold it from the lessee."

[Rowe v. Sharp.]

*Grant*, for plaintiff in error, argued that there was no evidence that Rowe and Fero had any knowledge of the "lease" from Sharp to Goff, and that the court erred in positively asserting that there was such evidence that the bill of 13th November passed the property to Goff, or at least that was for the jury; that the agreement of November 16th did not change the property in the tables: Price v. McAllister, 3 Gr. 248; that Sharp left the tables with Goff at his own risk: Martin v. Mathiop, 14 S. & R. 214; that it was an attempt on the part of Sharp to preserve a lien on personal property severed from the possession, which is unlawful: Jenkins v. Eichelberger, 4 Watts 121; and that Goff had such an ownership as gave him a right to pledge them to Rowe, who therefore might retain them until he was indemnified.

*James C.* and *F. F. Marshall*, for defendant in error, cited Chamberlain v. Smith, 8 Wright 431; Lehigh Company v. Field, 8 W. & S. 232.

The opinion of the court was delivered, October 26th 1865, by AGNEW, J.—That a sale of the billiard-tables was contemplated in the lease between Sharp and Goff of the 16th of November 1865 is manifest in the writing itself, as well as from the other evidence in the cause. But it is the character of the sale which must determine when the title vested. The bill of sale of the 13th November 1865 was not signed, and before Sharp, the manufacturer, parted with his possession, he had a right to dictate the terms of its transfer. He lived in the city of New York, and the tables were to be taken by Goff into Pennsylvania. The article of lease, as it is called, was the final act of the parties, executed, as its own provisions show, before Sharp had parted with his control. By its terms it is clearly a bailment for use (inaccurately termed a lease), with a provision for a sale in case the price of the tables should be fully paid. The possession was delivered to Goff upon the express terms that he was to take the tables to his place of business in Pennsylvania, keep them, and not remove them without Sharp's written consent, and would surrender them at the end of nine months, or sooner, on Goff's failure to pay the instalments as they fell due; and a title or bill of sale was only to be made on full payment of the price. The transaction is clearly a bailment of the possession, with an agreement for a future sale conditioned on the prepayment of the price. According to the authorities this is a valid contract, and can be enforced even against creditors: Myers v. Harvey, 2 Penna. R. 479; Clark v. Jack, 7 Watts 375. In the former, Gibson, C. J., says: "As it appeared on the evidence the case seemed to be that of a bailment, with a superadded agreement to vest the title in the bailee when he should pay a sum certain; and such an agreement is clearly con-

[Rowe v. Sharp.]

sistent with public policy. No facility to fraudulent dealing is afforded by it that is not afforded in the same degree by a naked contract of bailment. Such a transaction includes two distinct but consistent contracts—the one taking effect if at all when the other is spent. The contract of bailment preserves the ownership of the bailor during the particular relation created by it, and the contract of sale which supersedes it transfers the title as soon as it is called into action by payment of the price."

In Clark v. Jack the contract was in writing, and in its governing features the exact counterpart of the case before us, while the conflict was with a creditor who had levied and sold the property in the hands of the bailee as his property. Rose v. Story, 1 Barr 191, recognises these principles fully, and to these we add as confirmatory Vandyke v. Christ, 7 W. & S. 373; Henderson v. Lauck, 9 Harris 359; Linton v. Butz, 7 Barr 89.

Granting that a bonâ fide purchaser would be protected on the same footing as creditor, though not within the express terms of the statute of 13th Elizabeth, a position not now decided; in this case the plaintiff in error has but little to rest upon in the evidence. He took the tables only as a security, and while in the act of moving them he manifested his knowledge of the lease from Sharp to Goff, by inquiring whether it was good. Upon an examination of the charge as a whole, we do not discover that the fact of Rowe's knowledge was assumed or taken from the jury. The statement was manifestly hypothethical, for the judge adds: "If the facts were as thus stated, we would have to refuse an affirmative answer to the defendant's two propositions;" and concludes by referring the evidence to the credence of the jury.

The judgment is affirmed.