## Appeal of Edwards et al.
## Appeal of Edwards et al.
## Edwards et al. *versus* Stranghellan.
## Edwards et al. *versus* Ward.

1. Where goods have been levied on in execution, a third party cannot claim, in inconsistent rights, first, as owner of the goods, and secondly, after the goods have been sold, a lien on the fund as landlord. His first claim having been adverse to the execution, he is estopped from claiming to participate in its fruits.

2. In order to make a sale of chattels, which is conditional as to the parties, absolute as to creditors of the vendee, there must be a delivery of the goods in pursuance of the contract; and further, there must be at least such a conditional or qualified title in the vendee as to give him a transferable interest in the chattels—such an interest as he can, at any time during the running of the condition, sell and dispose of at his own will.

3. If, upon a transfer of chattels, it appears from the contract that the party receiving possession of the goods is to retain them for a definite period, and if, at or before the expiration of the period he pays for them he is to become absolute owner, otherwise to pay for their use, this is but a bailment, and the title to the property, even as against creditors of the bailee, remains in the bailor. If the bailee has paid part of the price, his interest in the goods may be taken in execution, but this will not affect the bailor's title.

4. To constitute a bailment, neither payment for the use of the goods, nor a promise to return them is essential.

5. An hotel was leased for five years. At the same time the lessor agreed " to furnish to the lessee, with the said hotel, under this lease, all the stock and furniture therein, and upon payment therefor, in full, to execute to him a bill of sale therefor, the title thereto to be and to remain in the lessor until the said payment." Under this agreement four thousand dollars had been paid on account of the price of the furniture:

*Held*, that the transaction amounted to a bailment only, and not a conditional sale, and that no title passed to the lessee which could be levied upon by his creditors.

January 17th, 1884.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEALS from and writs of error to the Court of Common Pleas. No. 4, of *Philadelphia county*: Of July Term, 1883, Nos. 59, 60, 61 and 62.

(1) Two appeals by Richard S. Edwards. Thomas A. Edwards, Joseph F. Edwards, Mary G. Edwards, Wilfred B. Fetterman and Elizabeth, his wife, from a decree of said Court in the matter of the distribution of a fund in Court, being the proceeds of a sheriff's sale of personal property taken in execution as the property of John D. Ward, under certain writs of fi. fa., wherein L. Stranghellan, Frank K. Ward and others were plaintiffs, and John D. Ward was defendant.

(2) Two writs of error to the judgments in two feigned issues, awarded under the sheriff's interpleader Act, wherein said Richard S. Edwards et al. were claimants and plaintiffs, and said L. Stranghellan and Frank K. Ward, respectively, were defendants; the said interpleaders were awarded in the cases of L. Stranghellan *v.* John D. Ward, and Frank K. Ward *v.* John D. Ward, and concerned the same goods which had been taken in execution, under said writs of fi. fa., as the property of John D. Ward.

These cases arose in the Court below in the following manner:

On August 20, 1881, certain judgments were recovered against John D. Ward, and executions issued under which all the stock and furniture in the St. George's Hotel, in Philadelphia, of which Ward was in possession, were levied upon as Ward's property. On August 24, 1881, Richard S. Edwards et al. notified the sheriff that they claimed to be the owners of all the personal property so levied upon. Five days later, on August 29, 1881, Richard S. Edwards et al. notified the sheriff that they would claim, out of the proceeds of sale of said goods taken in execution, the sum of $31,182.59 for rent due them as owners and landlords, by John D. Ward as tenant, of the hotel in which the said goods were levied upon. Thereupon the Court, on application of the sheriff, awarded two interpleaders and feigned issues, wherein Edwards et al. were plaintiffs, and L. Stranghellan and Frank D. Ward (execution creditors) were, respectively, defendants. The claimants filed narrs., but, waiving their right to enter security, the Court, on September 24, 1881, ordered the sheriff to sell the goods under the executions, and pay the proceeds into Court to abide the determination of the feigned issues. This was done, and so much of the fund as was not in dispute having been distributed by the Court, the balance ($5,000) was

referred to an auditor (W. Herbert Washington, Esq.,) to report distribution.

Before the auditor Richard S. Edwards et al. claimed the fund as landlords. The execution creditors contended that as Edwards et. al. had claimed the goods as owners, and feigned issues were then pending to determine the question of their title as such owners, they were estopped from claiming, as landlords, any part of the fund produced by the sheriff's sale of the goods sold as the property of John D. Ward, the defendant in the execution.

The auditor, in his (first) report, awarded the fund to Edwards et al. under their claim as landlords. Exceptions filed by the execution creditors to this report were sustained by the Court, June 23, 1882, and the case was referred back to the auditor to report distribution among the judgment creditors.

Pending said reference, on July 1, 1882, the Court, on petition of Edwards et al., and without objection by the other parties, made an order referring the question raised by the feigned issues, as to Edwards' ownership of the goods, to the same auditor for determination.

The auditor subsequently filed a second report, finding that Edwards et al. were not the owners of said goods at the time they were levied on, as against the execution creditors, and he therefore reported that judgments should be entered for the defendants in each of the feigned issues. The auditor also filed a third report, distributing the fund among the execution creditors.

Exceptions filed to the second and third reports were dismissed by the Court, and the reports were confirmed.

The claims of Edwards et al. before the auditor—whether as owners or as landlords—were based upon certain contracts in writing, by virtue of which John D. Ward was in possession of the hotel and the personal property therein. The following is a reference to the material portions thereof:

By agreement, dated February 24, 1876, John H. Edwards, trustee under the will of George W. Edwards, deceased, employed John D. Ward and Francis E. Ward as managers of the St. George Hotel, in the city of Philadelphia, at a compensation for their services of a sum equal to twelve per cent. of the net profits of the hotel business until March 31, 1877, of which they were to receive $150 monthly in cash, the balance to be retained by said trustee and applied to paying for all the stock and furniture, etc., in the hotel, which, by the agreement, the trustee sold and the Wards bought at cost, and at ninety per cent. of cost. The balance remaining due on April 1, 1877, for such furniture, to be paid as provided for

in a contemplated lease of the hotel from that date. Under this agreement the Ward Brothers took possession of the hotel as managers, and of the furniture.

By lease dated March 26, 1877, executed by George L. Crawford, substituted trustee under the will of George W. Edwards, deceased, in place of John H. Edwards, deceased, the hotel property was leased to John D. Ward (who had acquired Francis E. Ward's rights) for five years from April 1, 1877, at the yearly rent of $30,000, payable monthly in equal portions. This lease contained a provision that for breach of condition by the lessee the lessor might determine the lease at any time upon ten days' notice; and it also contained the following clauses:

IV. "The party of the first part agrees also to furnish to the party of the second part with the said hotel, under this Lease, all the stock and furniture therein on March 31, A. D. 1877, and upon payment therefor, as hereinafter provided, execute to him a bill of sale therefor, the title thereto to be and remain in the party of the first part until the said payment—the said stock including all provisions, liquors, cigars, supplies, etc., on hand, to be paid for at cost; and the said furniture, including all furniture, carpets, curtains, chairs, china, glassware, silver and plated ware, cutlery, kitchen utensils, range, cooking apparatus, gas fixtures, table and bed linen, mattresses, pillows, bolsters, bureaus, wardrobes, bedsteads, tables, sofas, lounges, washstands, pianos, piano-stools, mirrors, and ornaments, and, in fine, everything movable not purchased as stock, at ninety per cent. of cost, by applying to the said stock, and upon payment therefor, then to the said furniture, the balance due the party of the second part under Section Four of a certain Agreement made the twenty-fourth day of February, A. D. 1876, between John H. Edwards aforesaid, and Francis E. Ward; and the said party of the second part; and the residue to be paid by the application to that purpose monthly by the party of the second part of all profits made by him after April 1, A. D. 1877, under this Lease, less one hundred and fifty dollars per month, to be retained by the party of the second part. The furniture to be kept insured by the party of the second part in companies to be selected by the party of the first part, to an amount at least equal to the amount due the party of the first part, the insurances to be held by the party of the first part as security. The party of the first part to receive legal interest on the amount due on the furniture until fully paid for.

V. "The party of the second part further covenants and agrees with the party of the first part that he will not remove or allow to be removed the said furniture or any part thereof or any belonging to him, which he shall place in the hereby

demised premises except when he removes old to replace it with new, during the term hereby created, but said furniture shall remain in said premises during the whole term as security to the party of the first part, for the performance of all the terms of this Lease by the party of the second part."

John D. Ward thereupon became tenant in possession of the hotel under this lease, with such rights to the furniture etc. as he thereby acquired. Upon the change of his relations, and the adjustment of those as manager, he paid to the trustee $4.113.19 on account of the furniture. Its cost price to the Edwards' estate was 53,601.43.

In 1879, George L. Crawford's title as trustee became vested in Richard S. Edwards et al., who on August 18, 1881, notified Ward that they would determine the lease in ten days thereafter for non-payment of the monthly payments of rent due June 1, July 1, and August 1, 1881.

On August 20th, 1881, the judgment in favor of Stranghellan, and other judgments, were entered against John D. Ward, under executions on which the furniture was sold, as already stated.

All exceptions to the auditor's second and third reports having been dismissed by the court (as hereinbefore set forth), Richard S. Edwards et al. took these appeals and writs of error. The assignments of error filed in the appeals, were, in substance, that the court erred in not confirming the auditor's first report, and in confirming the auditor's second and third reports, thereby deciding that the appellants were not entitled to claim on the fund in court for rent due them as landlords. The assignments of error filed in the writs of error were, in substance, to the action of the court in not sustaining the exceptions of Richard S. Edwards et al. to the auditor's second report, and in entering judgments for the defendants in the feigned issues, thereby deciding that the appellants were not owners of the goods in question at the time they were levied on, as the property of John D. Ward. The cases were argued together.

*Rowland Evans* and *R. L. Ashhurst*, for the appellants and plaintiffs in error.

*Rufus E. Shapley*, for the appellees and defendants in error.

Mr. Justice GORDON delivered the opinion of the court, February 18th, 1884.

We have before us for our consideration two appeals and two writs of error; as, however, they all arise from the distri-

bution of but one fund, they were argued as one case, and therefore require but one opinion for their disposition.

We are of the opinion that the two cases which are now before us in the shape of appeals were well disposed of in the court below. When, on the 24th of August, 1881, the appellants gave notice to the sheriff, who had then levied, or was about to levy, on the furniture of the St. George Hotel as the property of John D. Ward, on the writs of Stranghellan and others, that they claimed the goods as their own, and thus denied the title of their tenant, their status as adverse claimants to those writs was fixed. Two things resulted from the position which they in this manner assumed; first, they put the sheriff and the execution creditors in the position of trespassers, and imposed upon them the risk and cost of maintaining Ward's title, from which necessity they would have been relieved had the appellants claimed but as landlords; second, they disclaimed all interest in any fund that might arise from the sale, in that they denied their tenant's title in the goods levied upon; for necessarily their claim must be limited to the proceeds of the sale of the goods of the tenant, and not to the proceeds of the sale of their own goods, which sale was a proceeding adverse to their alleged right, and for the infringement of which they held the plaintiffs to an account in the whole value of the goods levied upon. How then, we ask, can they come in on the fund raised from a sale of these goods, claiming, as they do, adversely to the very writs on which that sale was made? We think that even without the authority of Bush's Appeal and Vetter's Appeal we might venture to say this cannot be done. But it is urged that these landlords were not bound to make choice between these two claims; they might pursue both, and if one failed they might resort to the other. That is, in plain English, they might both affirm and deny their own title; claim under the writs or adversely to them; might hold the plaintiffs in those writs for the whole value of the property, or failing in this, might nullify their own words and acts, and as landlords claim the fund as the product of their tenant's goods. To this we cannot agree. With bonâ fide creditors this kind of double dealing is not allowable. It is out of all conscience that creditors should be thus driven to the trouble and expense of disproving title in the claimants, and when this has been successfully accomplished, that those same claimants should be permitted to pocket the fund by the interposition of the very title by which they were defeated. As to this, the learned Judge of the court below has well said, "If they lose their claim as landlords by attempting to play a double-handed game for the fund in court, no one is to blame for it but themselves."

The remaining question arises in the consideration of the writs of error. The auditor and court below held, that the agreement of the 26th of March, 1877, between George L. Crawford, trustee of the Edwards' estate and John D. Ward, was, as to the personal property therein described, a conditional sale, constructively fraudulent as to creditors, hence, said property was liable to seizure and sale as the property of Ward. We are inclined to think that this conclusion was erroneous. In order to make a sale, which is conditional as to the parties, absolute as to creditors, there must be a delivery of the goods in pursuance of the contract, for without this there can be no present sale, and an agreement of sale without an accompanying transfer, amounts to nothing more than a contract to sell at a future time, or upon the fulfillment of stipulated conditions. Furthermore, the delivery of possession alone, though a material indicium of ownership does not of itself constitute a sale, for the goods may be delivered in bailment, as in loan or hiring. There must in addition to the possession, be at least such a conditional or qualified title passed to the buyer as to give him a transferable interest in the chattels; such an interest as he can, at any time during the running of the condition, sell and dispose of at his own will. Krause *v.* The Commonwealth, 12 Nor., 418. Again, in order to ascertain whether the contract is one of sale, or of bailment only, we must, where there is doubt, ascertain from the terms of that contract, the intention of the parties. Enlow *v.* Klein, 29 P. F. S., 488. If from that contract we discover that the party who receives the possession of the goods, receives them under an agreement that he is to retain them for a definite period, and if at or before the expiration of that period, he pays for them he is to become the owner, otherwise to pay for the use of them, this, as was held in Rose *v.* Story, 1 Barr, 190, is but a bailment, and the title to the property, even as against creditors, remains in the bailor. If during the period of the bailment the bailee pays part of the price fixed, a creditor may levy upon and sell the bailee's interest, but no right of the bailor will thereby be extinguished. Although payment for the use of the bailed goods is, in the above citation, stated as a condition of the bailment, yet it is clear that this is not always necessary, for a loan under a like condition of sale would be good. Clark *v.* Jack, 7 Watts, 375. Neither is a stipulation for the return of the property on the expiration of the time during which the bailment is operative, necessary, for if it is not returned the bailor may resort to his legal remedies, and thus enforce the contract. Enlow *v.* Klein supra.

On the other hand, when, from the contract or arrangement

between the parties, the possession is transferred to the vendee, and the ostensible ownership reserved to the seller for the purpose of security only, there, whilst the condition is good as between the parties, it is bad as to creditors; as to the latter the sale is absolute. Martin *v.* Mathiot, 14 S. & R., 214; Brunswick Co. *v.* Hoover, 14 Nor., 508.

The legal principles entering into the consideration of this case being thus defined, let us see what were the terms and conditions of the agreement of the 26th of March, 1877, and ascertain, if we can, from those terms and conditions, what was the true and honest intention of the parties. First, there was the lease of the hotel to run for the term of five years from the 1st of April, 1877; then there was, second, the agreement "to furnish to the party of the second part, with the said hotel, under this lease, all the stock and furniture therein on March 31st, 1877." This looks to us like a leasing of the furniture as well as of the hotel. Under this lease the lessor was as much bound to put Ward into the possession of the personal property as he was to put him into the possession of the realty, and, in fact, the latter could not be used without the former; if Ward did not get the furniture he could not run the hotel. He thus went into the possession of both by virtue of the lease and by virtue of nothing else. Nor is it necessary for us to stop to consider the partial payment made upon account of the furniture under the previous lease, for both parties deal upon the assumption that that furniture did, on the 1st of April, 1877, belong to the lessor, and as there were at that time no intervening creditors, we must leave the matter as the contracting parties settled it.

Now, the auditor admits that a lease of both hotel and furniture would, as to the latter, have been a legitimate bailment, and that not even a superadded clause for a conditional sale, would have brought the plaintiffs within the statute of Elizabeth, and in this he is undoubtedly correct. But we cannot see how any one can undertake to say, in view of the contract of the parties and the surrounding circumstances, that Ward either did get, or could have gotten into the possession of these goods on the 1st day of April, 1877, in any other capacity than as the tenant of Edwards' estate. It was certainly not at that time intended that they should be handed over to him as owner, or that he should have a present transferable interest in them. They were the necessary appurtenances of the hotel, and as tenant of that hotel he came into the possession of them. But if his possession came through the lease, it is conceded that the subsequent provision for a sale could not alter the character of that possession, or change the nature of the contract resulting from it. Nor do the

words of the agreement leave the intention of the parties at all obscure. By express stipulation no title to the goods was to pass to Ward until they were fully paid for, and until he did so pay for them he could have no transferable interest in them, otherwise he could at any time defeat the object of the lease by a sale of that interest. It is however, unnecessary for us to dwell upon this matter, for, as we have shown, if Ward's possession was originally under the lease, that determines the character of the transaction, and fixes it in the outstart as a bailment, and as he never complied with the conditions of the contract, under which alone he could have acquired title, the matter remained throughout as it began, a bailment.

The appeals are dismissed and the decrees therein affirmed at the costs of the appellants. The judgments on the feigned issues are reversed, and it is ordered that judgments be entered for the claimants, the plaintiffs below.

PER CURIAM. On motion, ordered that the judgment of this court in the above named cases be so amended as to read as follows: After the words, "the appeals are dismissed and the decrees therein affirmed at the costs of the appellants," the judgments on the feigned issues are reversed, and it is ordered that a single judgment be entered for the defendants in the sum of $719.23.

(Filed March 24, 1884.)