## C. B. Harper, Administrator et al., Appellants, *v.* James Hogue and William Tryon.

*Conditional sale—Fraudulent as to creditors.*

A sale and delivery of personal property with an agreement that the ownership shall remain in the vendor until the purchase money is paid, is fraudulent and void as to creditors of the vendee and innocent purchasers.

*Conditional sale—Bailment.*

An agreement to sell a portable mill for $350, payments to be made monthly, based on the feet of lumber sawed, conditioned that after such payments amount to the sum designated, the mill shall become the property of the vendee and until which time it shall remain the property of the party of the first part and any payments as above to be considered as rental for said mill, when accompanied by delivery of possession to vendee, constitutes a conditional sale and not a bailment.

Argued May 8, 1899. Appeal, No. 43, April T., 1898, by plaintiffs, from order of C. P. Beaver Co., June T., 1898, No. 385, directing sheriff to sell goods levied upon as the property of William Tryon which were claimed by plaintiffs. Before RICE, P. J., ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by BEEBER, J.

Sheriff's interpleader. Before WILSON, P. J.

The facts sufficiently appear from the opinion of the court below which is in part as follows :

Fi. fa. No. 56, June term, 1898, sur judgment No. 224, June term, 1898, James Hogue v. Wm. Tryon, was issued April 16, 1898, and the sheriff levied on May 14, 1898, on one lot of household goods, stove, table, beds and bedding, chairs, etc., two-horse wagon, harness, etc., one portable sawmill, complete, and one lot of lumber.

The plaintiffs in this case filed with the sheriff notice of claim

to certain of the property levied upon. The claim of C. B. Harper, as administrator of Andrew Harper, claims the sawmill, taken in execution as the property of William Tryon, to be the property of Andrew Harper's heirs. Elsie A. Tryon, wife of William Tryon, claims a large portion of the household furniture levied upon as her property and not the property of William Tryon. Also, Charles Darnell claims the team of horses, set of double harness and wagon as his property, and not the property of William Tryon.

All the property levied on was taken in execution as the property of William Tryon, at the suit of James Hogue. The three claimants, plaintiffs in this proceeding, claim nearly all the property thus levied upon not to be the property of William Tryon, but the property of the plaintiffs above stated.

It seems from the evidence that the defendant in the writs, William Tryon, was engaged in sawing lumber in New Sewickley township, this county, using therefor a portable steam sawmill. C. B. Harper, administrator, introduces in evidence upon the hearing an article of agreement, of which the following is a copy:

"Agreement made and concluded this 9th day of October, 1896, by and between Andy Harper of the first part and William Tryon of the second part, the party of the first part agrees that he will sell and transfer to the party of the second part on the fulfilment of the covenants and conditions hereinafter contained, the undivided portable steam saw mill and all fixtures, for the sum of three hunded and fifty dollars ($350). Said sum is to be paid at the rate of seventy-five cents, 75/100 per thousand in payments. Said payments is to be made at the first of every month, for all sawing that was done and received payment for the month previous. At which time when full payment is made as provided above said mill shall become the property of the second party, until which time it shall remain the property of first party and any payments made as above provided shall be made as rental for said mill. It is also further agreed that the party of the second part, has the privilege and full consent of the party of the first part to move said mill wherever party of the second part may have sawing to do, this agreement is made subject thereto and with full knowledge of said parties, the party of the first part agrees to all the fore-

going conditions and covenants, and the party of the second part agrees to make the payments as provided.

" In witness whereof said parties have hereto set their hand and seal the day and year first above written. The above agreement shall not continue longer than three years.

" Witness:                ANDREW HARPER, (Seal)
                      " WILLIAM TRYON.   (Seal) "

The contention of the plaintiffs in this case is that this paper constituted a bailment and not a sale. On the other hand, the defendant in the writ, James Hogue, contends through his counsel that the delivery of the mill in question to the defendant under the terms of the paper, or agreement, introduced in evidence and above set forth, was a conditional sale, and, while it was good as between the parties thereto, that it was void as to the creditors.

From the decisions of the Supreme Court as to what constitutes a bailment and what a conditional sale there seems to be considerable confusion. The strongest case that could have been relied upon by the claimants upon the question of bailment is Enlow v. Klein, 79 Pa. 488. In this case Enlow agreed with Moritz to furnish him with a team of horses, wagon, etc., for country peddling; he to pay Enlow weekly the sum of $5.00, in 200 payments; the team, etc., " to belong to and be managed by Enlow until the last of the two hundred payments; " Moritz to keep up all repairs, and if a horse should die to replace him at his own expense; Enlow " relinquishing all his right, etc., to Moritz when the last payment is made of the two hundred." Held to be a bailment.

The Supreme Court, passing upon the question raised in that case said, among other things: " In the construction of this contract, as of all others,—the intention of the parties is to be gathered from all its provisions. It is a case governed rather by the principal ingredients in which Rose v. Storey, 1 Pa. 190, was ruled, ' That where, by a contract, the vendee receives a chattel which he is to keep for a period, and if in that time he pays for it the stipulated price he is to become the owner, but if he does not pay the price he is to pay for its use, the vendee receives it as bailee, and the right of property is not changed until the price is paid. . . . The failure in the agree-

ment to give to Enlow express power to regain possession of the property only left him to his adequate legal remedies ; and the stipulation on the part of Moritz to surrender such possession would have had the effect neither to help nor hinder Enlow in the assertion and enforcement of his rights.' In that case by the terms of the agreement Enlow was to furnish Moritz with a team of horses, or mules, necessary wagons, gears, etc., necessary for country peddling, and Moritz was to pay a weekly sum to Enlow for such furnishing, and to perform certain other stipulations set out in the agreement. The use of such a word as furnishing, vague as it is in its signification, would leave the clause in which it occurs of ambiguous import, if there were nothing beside it to indicate the sense in which it was employed. It may imply a sale, a lease, a loan, a gift, a delivery of a chattel in payment of a debt, in accordance with its context and subject-matter. As used here it was the manifest intention of Enlow to place certain personal property belonging to him in the possession of Moritz, for the use of which weekly payments were to be made by the latter, and the ownership of which was to vest when and only when these weekly payments should have been made 200 times ; and it was the manifest intention of Moritz to receive the possession of the property on these conditions. The stipulation was express that until the payment of the last instalment the team, wagon and fixtures 'were to belong to and be managed by Enlow,' and then, and not till then, his ownership was to be relinquished. No present interest was created in Moritz by this agreement, so as to make a property subject in his hands at the claim of execution creditors.

" This is not such a case as that of Martin v. Mathiot, 14 S. & R. 214, where possession was delivered to the vendee in pursuance of a sale actually made, with the condition added that the title to the chattels sold should remain in the vendor until the purchase money should be paid."

In comparing the case in hand with the one from which the above citations have been made, we have on the part of Andrew Harper, an agreement that he will sell and transfer to William Tryon a portable steam sawmill and fixtures, on the fulfilment of the covenants and conditions contained in the agreement, for the sum of $350. This sum for which the said Harper agreed

that he would sell the mill was to be paid at the rate of seventy-five cents per thousand, meaning that William Tryon would pay to Andrew Harper seventy-five cents on every thousand feet of boards sawed upon the mill by the said Tryon and the money collected for said sawing, these payments to be paid at the first of every month, and whenever these payments amounted to the sum of $350 then the mill was to become the property of Tryon, but until said time, not to exceed three years, the mill was to remain the property of the said Harper; and such payments as had been made up until the time the payments amounted to the price fixed for the mill, $350, were to be made as rental for the said mill.

Under the case of Enlow v. Klein in the construction of this contract we must gather from its provisions the intention of the parties.

Was the intention of Andrew Harper to place the mill belonging to him in the possession of Tryon, for the use of which monthly payments were to be made by Tryon, and the ownership was to vest in Tryon when these payments should have amounted to $350?

Mr. Justice STERRETT in Forrest v. Nelson, 108 Pa. 481, in commenting upon the case of Enlow v. Klein, said: "In Rowe v. Sharp, 51 Pa. 26, and Enlow v. Klein, 79 Pa. 488, both of which are on the border, the doctrine of bailment was carried to its extreme limit. Upon the facts peculiar to those cases respectfully they are doubtless decided correctly, but any further advance in the same direction would be unwarranted."

In Stephens v. Gifford, 137 Pa. 219, Mr. Justice WILLIAMS delivering the opinion of the Supreme Court, citing Benjamin on Sales, 6, said: "It is of the essence of the contract of bailment that the article bailed be returned in its own or some altered form to the bailor, so that he may have his own again."

Mr. Justice PAXSON delivering the opinion of the court in Stadtfeld v. Huntsman, 92 Pa. 51, says: "It has long been an established rule in Pennsylvania that a sale and delivery of personal property, with an agreement that the ownership shall remain in the vendor until the purchase-money is paid, is fraudulent and void as to the creditors of the vendee and innocent purchasers; yet there are exceptions to the rule that possession must accompany the ownership of chattels. It was said by

TILGHMAN, Chief Justice, in Martin v. Mathiot, 14 S. & R. 214, that there are certain necessary and lawful contracts by which the owner parts with the possession, and yet fraud cannot be presumed. Such are the contracts of lending and hiring, both very useful, and without which society could not well exist. It is of the essence of it that the owner should give up the possession for a time. Various devices have been resorted to at times to evade the above rule, and it is believed in the long line of cases upon the subject it has not been substantially departed from. There have been numerous cases of bailment, some of them perhaps very close upon the border, where no present contract of sale is made, that have been excepted from the operation of the rule. Any apparent conflict between decided cases is doubtless owing to the difficulty of applying the principle referred to to the facts of a particular case; and in commenting upon Enlow v. Klein, says: 'It is an admittedly close case . . . . yet we regard it as rightly decided. . . . An examination of the facts shows that it was a case of hiring; that $2.00 a week of the sum to be paid was for the use and hire of the horses. This clearly appears in the report of the facts, and is also referred to in the opinion of our lamented brother, WOODWARD. This was an important feature of the case in our consultation, and is referred to now that it may not be misunderstood hereafter. Enlow v. Klein was justified by the authorities, and we do not propose to disturb it, but we will not take one step beyond it; we stop just where it ends.' "

In the case of Farquhar v. McAlevy, 142 Pa. 233, machinery was delivered under a contract termed a lease, the lessee promising to pay a sum certain in instalments, " as hire in advance for the use of said machinery so long as I shall retain it." In case the instalments are unpaid when due, the lessor may take the machinery without trespass, the hire then unpaid to be forfeited. It was also provided, " When I have fully complied with the conditions . . . . I am to have the privilege of buying said machinery . . . . upon my paying the sum of one dollar," on a date certain, " otherwise the title to said machinery to remain in the said lessor as aforesaid." One half of the hiring had been paid, and the property was levied upon as belonging to the lessee. The court below in overruling a motion for a new trial said, " The case in hand is clearly a conditional sale and not a

bailment." The Supreme Court in a per curiam opinion said that the contract under which the mill was sold lacked the essential feature of a bailment, to wit: a stipulation for the return of the property at the end of the term.

Mr. Justice BLACKSTONE defines a bailment to be a delivery of goods in trust, upon a contract, expressed or implied, that the trust shall be faithfully executed upon the part of the bailee : 2 Bl. Com. 451.

Chancellor KENT takes the definition with the addition, "And the goods restored by the bailee as soon as the purpose of the bailment shall be answered : " 2 Kent's Com. 558.

Mr. Justice STORY defines a bailment to be, "A delivery of a thing in trust for some special object or purpose, and upon a contract express or implied to conform to the purpose or object of the trust : " Story on Bailments, sec. 2.

The examples of bailments given by Mr. Justice BLACKSTONE are : " A delivery of cloth to a tailor to make a suit of clothes ; " "goods to a carrier to convey ; " " to an innkeeper or other person to keep ; " " to a pawnbroker in pledge ; " " cattle to an agister to graze ; " and " contracts of hiring and borrowing." These examples show the character of the trust referred to in his definition.

" A sale is a transmutation of property from one man to another in consideration of some price or recompense in value : " 2 Bl. Com. 446.

A sale is a contract for the transfer of property from one person to another for a valuable consideration: 2 Kent's Com. 468.

To hold that the agreement in evidence constituted a bailment of the mill in question in the hands of Tryon, would be to go on beyond the rulings in the case of Enlow v. Klein, as will be seen in the subsequent comments upon that case by the judges who were in consultation with Judge WOODWARD when it was decided by the Supreme Court, that the same was decided because it appeared from the facts in the case that $2.00 of the $5.00 weekly payment was applied by the parties for the use or hire of the horse or horses, and that this fact influenced the decision.

In the case in hand from the facts it appears that the mill in question was delivered to the defendant in the writ, William Tryon, who agreed to pay therefor the sum of $350, and these

payments were to be made as fast as the work was done upor the mill, and were fixed by the amount of lumber sawed. This, it is true, would be uncertain. No fixed sum was agreed to be paid; and the agreement further stipulates that these payments, so made, would be made as rentals for said mill, meaning thereby that Andrew Harper delivered to William Tryon the mill in question, he to pay for the same from the earnings of the mill, if the same were sufficient in three years to pay the amount agreed upon. The mere stipulation to hold the title to property in the seller under this agreement would not avail as against creditors. It is distinguishable from the case of Enlow v. Klein in this, that the manifest intention of Andrew Harper when he made this agreement, was to sell to William Tryon the mill in question, and the provision contained in the after part of the agreement, that the title to the property should remain in Andrew Harper, and that the amounts paid thereon until the whole sum was paid should be paid as rentals for the mill, was only a provision to secure the payments. No provision is contained in the lease for the return of the mill in case Tryon ceased to make the payments at any time as he agreed upon; nor is there any provision to return the mill if at the end of the three years the payments so made did not amount to the sum of $350. The agreement in question does not provide that Andrew Harper transfer the mill to William Tryon to use, and that certain payments were to be made for the use thereof; but possession was delivered upon William Tryon agreeing to pay a certain price in a certain manner. It appears in this case that William Tryon had paid to the claimant about $134 on account of the contract price. The date of the agreement was October 9, 1896. The three years' term provided in the contract will not expire until October 9, 1899.

Mr. Justice STERRETT further said in Forrest v. Nelson, supra: "When it appears from the contract between the parties that the owner of personal property has transferred the possession thereof to another, reserving to himself the naked title thereof solely for the purpose of securing payment of the price agreed upon between them, the contract is necessarily a conditional sale and not a bailment; and while it is perfectly good as between the parties themselves, it is worthless as to creditors and bona fide purchasers from the transferee without notice."

Hence as to the claim of C. B. Harper the rule is made absolute, and the sheriff is directed to proceed and sell the property.

[And now, July 2, 1898, the rule in this case as to C. B. Harper is made absolute, and the sheriff is directed to sell the goods levied upon as the property of William Tryon, claimed by the said C. B. Harper. The rule as to Elsie A. Tryon is discharged, and the goods claimed by her released from the levy. As to Charles Darnell an issue is awarded as provided for by the rule of court.] [1]

*Error assigned* was (1) to the order of the court, reciting same.

*Richard W. Stiffey,* for appellant.—The agreement between Harper and Tryon is a bailment with a superadded agreement for a future sale. These have ever been upheld by our courts. This case is almost parallel with Clark v. Jack, 7 Watts, 375. In that case it was a bailment by lending, in this a bailment by hiring: Myers v. Harvey, 2 P. & W. 478; Clark v. Jack, supra; Enlow v. Klein, 79 Pa. 488; Brown Brothers v. Billington, 163 Pa. 76.

Where by a contract the vendee receives a chattel which he is to keep for a certain period, and if in that time he pays for it the stipulated price, he is to become the owner, but if he does not pay the price he is to pay for its use, the vendee receives it as bailee and the right of property is not changed until the price is paid: Rose v. Story, 1 Pa. 190.

This was the precise point decided in Clark v. Jack, 7 Watts, 375. This is our case.

There is no present sale, " the party of the first part agrees that he will sell and transfer to the party of the second part."

The case is clearly within Enlow v. Klein, 79 Pa. 488. A definite term for the bailment is fixed, and the payments are rental, pure and simple.

The contract is clearly a bailment, and contains everything necessary to constitute a legal bailment. For further light see Rowe v. Sharp, 51 Pa. 26, Ott v. Sweatman, 166 Pa. 217, 227, and Goss Printing Company v. Jordan, 171 Pa. 474, 477.

*A. P. Marshall,* with him *J. M. Martin,* for appellees.—If the intention of the parties were a leasing or letting of the

mill, that intention was capable of easy expression, and had such been the case would doubtless have been so written. This case is clearly beyond the limits of the ruling of the Supreme Court in Rowe v. Sharp, 51 Pa. 26, and Enlow v. Klein, 79 Pa. 488, in comment on which Justice STERRETT says: "These cases are on the border, the doctrine of bailment was carried to the extreme limit . . . . and any further advance in the same direction would be unwarranted:" Forrest v. Nelson, 108 Pa. 481. Justice PAXSON expresses the same view in Stadtfeld v. Huntsman, 92 Pa. 53.

OPINION BY BEEBER, J., July 28, 1899:

We think the learned court below arrived at the proper conclusion in holding the agreement in this case to be a conditional sale. It provides that Harper will sell and transfer to Tryon the portable steam sawmill for a certain sum which is to be paid for at a certain rate and at certain times. All the terms that usually are found in agreements of sale are first clearly defined before the agreement provides that the property shall become the property of Tryon, when full payment is made, "until which time it shall remain the property of" Harper, and "the payments made as above provided shall be made as rental for said mill." This case does not belong to that class where the terms of a lease are clearly set forth to which is added an agreement to sell at the termination of the lease. There is no other language in the agreement, except this in reference to payments being considered as rental, that shows it was to be a lease or bailment. It seems clear to us that this reservation of title in Harper and the provision that payments shall be made as rental indicate that the first intent was a sale with an attempt to reserve the title as security for the purchase money. When a man leases his property he does not think it necessary to insert a clause that the property leased shall remain the lessor's until it is fully paid. The insertion of such a clause rather indicates an intention to preserve a lien for the price. This was clearly shown in Ott v. Sweatman, 166 Pa. 217.

It is argued that because the agreement provides that Harper "will sell and transfer to the party of the second part on the fulfilment of the covenants and conditions hereinafter contained," it shows an intent that there is to be a sale only after the full

payment of the purchase money, and thus the case is within that class of which Clark v. Jack, 7 Watts, 375, is a type. Some strength might be conceded to this argument if it appeared that possession of the mill was taken in pursuance of some terms in the agreement showing a lease or bailment. But this does not appear. The agreement provides for nothing but a sale—reserving the title and calling payments rental, it is true—but still speaking only of a sale. The use of the word " will " applies as well to the word " transfer " as it does to the word " sell " and the seller himself has put a construction upon this by delivering the mill at the time of the execution of the article of agreement. By the use of this word under such circumstances he does not seem to have meant so much to emphasize the time when he would sell in the future but rather to express a present intent, which was to sell. The words in reference to fulfilling certain covenants and conditions still have something to operate upon by holding them to apply to the payments in the manner and at the times provided for in the agreement. They seem to us rather to strengthen the inference that a conditional sale was intended with a reservation of title as security, as they are used in immediate connection with words that can mean nothing but a sale. The opinion of the learned court below shows how the cases of Rowe v. Sharp, 51 Pa. 26, and Enlow v. Kline, 79 Pa. 488, upon which appellant mainly relies, have been criticised and explained. They have gone to the extreme limit and cannot be regarded as authority except for cases with facts identical.

Judgment affirmed.