## Scattergood v. Pine Ridge Coal Company.

*Bailments—Lease—Machinery on mortgaged premises—Receiver—Right of bailor to retake property.*

Where coal mining machinery is placed upon mortgaged premises subject to a bailment lease giving the bailor the right to retake the same upon default in payment of rents, the bailor may exercise such right against a receiver for the bailee appointed by the court, if it appears that no rights of creditors are involved and no credit has been extended by reason of the presence of the machinery on the premises. It is immaterial that the bailee had a right to purchase the machinery for $1 upon compliance with the terms of the lease. A stipulation in the lease that rental was to be paid in other forms than money does not affect the bailment.

Petition for order on receiver to deliver machinery to claimant. C. P. No. 5, Phila. Co., March T., 1923, No. 6667.

*Townsend, Elliott & Munson*, for plaintiff.

*Casper W. B. Townsend*, for defendant.

MARTIN, P. J., June 26, 1924.—The Pine Ridge Coal Company operated the coal mines it owned, located in Clearfield County, Pennsylvania.

On June 1, 1920, a mortgage of the entire property, real and personal, including machinery and equipment, was executed by the coal company to the Provident Life and Trust Company of Philadelphia, as trustee, to secure payment of bonds amounting to $250,000.

The mortgage provided that all property, real and personal, of every kind and description, when and as to the extent thereafter acquired by the company, should, without any further conveyance or assignment, immediately upon such acquisition, become and be subject to the lien of the mortgage as fully and completely as though owned by the company at the date of the mortgage, and expressly and specifically conveyed by and embraced in the granting clauses of the mortgage.

For the purpose of obtaining money to equip the mine at Ames, Pennsylvania, with electrical machinery, the Pine Ridge Coal Company entered into an agreement, dated June 16, 1923, with Pardee Brothers & Company, Inc., by the terms of which Pardee Brothers & Company, Inc., agreed to pay for the electrical equipment and machinery to the extent of $25,000, and the Pine Ridge Coal Company agreed to lease this machinery from Pardee Brothers & Company, Inc. A written agreement was executed by both parties, in which Pardee Brothers & Company, Inc., was lessor and the Pine Ridge Coal Company lessee, and stipulating that the lessor lease to the lessee the electrical equipment and machinery described and valued as indicated in the schedule attached to and made part of the lease, which was to run from the date of its execution until June 30, 1925. Contracts were made by the coal company

directly with concerns that manufactured machinery, and, when installed in the mine, Pardee Brothers & Company, Inc., paid the concerns by whom it was furnished. The lease granted to the coal company the privilege of using the machinery until June 30, 1925, and thereafter until the lessee should have mined and delivered to the lessor coal from its mines in the aggregate quantity of 100,000 net tons, at the expiration of which time the lessee agreed to return the machinery to the lessor unless it was purchased by the lessee from the lessor. The lessee agreed to pay as rent for the use of this machinery and equipment the aggregate sum of $25,000, by shipping on orders by the lessor 100,000 tons of coal in approximately equal monthly portions from the lessee's mines, 30,000 tons during the year beginning July 1, 1922, and ending June 30, 1923; 35,000 tons during the year beginning July 1, 1923, and ending June 30, 1924, and 35,000 tons during the year beginning July 1, 1924, and ending June 30, 1925, which coal was to be billed to the lessor at a price less than the rate charged others to whom the lessee supplied coal; and from the bills the lessor was to be allowed 25 cents per ton to be credited on account of the rental of the machinery and equipment until the full amount of the $25,000 rental should have been deducted from the purchase price of coal. If the aggregate amount of coal shipped prior to July 1, 1925, was less than 100,000 tons, the lessee was required to continue shipments after that date. If at any time default was made in the performance of the undertaking by the lessee, the lessor was authorized at its option, without demand first made, to repossess itself of the machinery and equipment and hold it discharged from any liability from the lessee's option to purchase, and to retain all rent paid, and to recover from the lessee rent due at the time of such repossession, together with damages in case of injury to any of the electrical equipment and machinery, and also for breach of the agreement, the damages to be ascertained by charging the lessee with the balance of rent due under the terms of the lease and allowing credit for the actual value at the time the electrical equipment and machinery was repossessed; but the damages to be limited to $25,000, the amount originally advanced to pay for the machinery, with interest. When the lessee faithfully performed the stipulations of the agreement without default, and reimbursed all outlays made by the lessor, the lessee had an option, at any time within one month after the total amount of rent was paid, to purchase the electrical equipment and machinery at the price of $1, and, upon payment of that sum, the lessor agreed to execute a bill of sale conveying the machinery and equipment to the lessee; but it was specifically understood that nothing contained in the lease should divest the title of the lessor to the electrical machinery and equipment until the rents, purchase money and other charges were paid in full by the lessee and a bill of sale executed and delivered; until after such payment and delivery, the machinery and equipment remained the property of the lessor, and no right passed to the lessee except that of using it under the terms of the lease.

Shortage of cars rendered it impossible for the lessee to perform the covenants of the lease requiring delivery of coal to the lessor.

Upon application of creditors, a receiver was appointed by the court for the Pine Ridge Coal Company. The mines were closed, and no coal was shipped to the lessor after May 11, 1923. The receiver never operated the mines.

Pardee Brothers & Company, Inc., presented the petition now under consideration, averring failure of the Pine Ridge Coal Company to pay rent under the terms of the lease, and praying for an order directing the receiver

to surrender the machinery and equipment in accordance with the terms of the lease.

An answer was filed by the receiver, averring that both parties to the lease had disregarded its terms and treated the machinery as having been purchased directly by the Pine Ridge Coal Company, and claiming that title to the machinery never vested in Pardee Brothers & Company, Inc., but that it is the property of the Pine Ridge Coal Company, assets for the payment of creditors, and subject to the lien of the mortgage.

Depositions were taken which proved that it was the intention of the parties to the lease to provide means to furnish electrical equipment in the mine and secure Pardee Brothers & Company, Inc., who were willing to advance the necessary money. The contracts made by the Pine Ridge Coal Company with the parties who installed the machinery and equipment were placed in evidence, and the payment by Pardee Brothers & Company, Inc., for the equipment and installation directly to the parties from whom it was furnished was proved. The contracts between the Pine Ridge Coal Company and parties by whom the machinery was furnished were made subsequently to the date of the lease. The marking of the machinery with the words "Property, Pardee Bros. Co., Inc., Owners and Lessors," was made by stencil upon it before the appointment of the receiver, and, after the receiver was appointed, brass plates with black letters were attached containing the same words.

It is claimed by the receiver that the machinery and fixtures, as soon as they were installed in the mine, became subject to the lien of the mortgage by virtue of the provision that all property thereafter acquired should become subject to the lien of the mortgage; but this provision was limited in terms "to the extent thereafter acquired by the company," and the title of the company was that of a bailee.

The lease was not recorded, but there was no proof of credit having been extended to the coal company upon faith of possession by the company of the machinery and equipment, and no rights of creditors are involved.

In Morris's Appeal, 88 Pa. 368, relied upon as establishing the right of the mortgagee to fixtures and appurtenances on the mortgaged premises acquired after date of the mortgage to be superior to the title of an assignee for the benefit of creditors, who was a mere representative of his assignor, enjoying his rights and bound where he would be bound, the tools and equipment in question were owned by the mortgagor.

The duty of a receiver is to take possession of the property in the room or place of the owner thereof, under the sanction of the court; and, when necessary, to do all acts of ownership to make the property productive for the parties to be ultimately declared entitled to it as the owner could do if he were in possession: Kerr on Receivers, ch. VII, page 211.

"The receiver acquired no title, but only the right of possession as the officer of the court. The title remained in the corporation in which it was vested when the appointment was made:" Bullock E. M. Co. v. Traction Co., 231 Pa. 129-131.

The trustee of the mortgage took no higher title than the mortgagor, which was that of a bailee.

The receiver was held entitled to equipment placed in the mortgaged premises after the date of the mortgage in Bullock E. M. Co. v. Traction Co., 231 Pa. 129; but there had been a sale of the equipment to the owner of the premises and it was attached to the realty.

In Goss Printing Co. v. Jordan, 171 Pa. 474-476-477 and 478, it was said: "Delivery does not consist in the mere transfer of location or custody of

property. There must be the mind of both parties concurring in the transfer in accordance with the contract. . . . The principal cases on this subject were very recently reviewed in Brown Bros. v. Billington, 163 Pa. 76. . . . Although the intent of the parties, and the effect of their agreement, was to vest the title at a future day in the purchaser, he having actual possession in the meantime, yet, as the intervening arrangement was upon a valid contract of bailment as between the parties, the title of the bailor was preserved until terminated by compliance with the provisions for a sale, at which time that portion of the agreement became operative."

"In the case before us the agreement upon its face is clearly a bailment: Stiles v. Seaton, 200 Pa. 114; Ditman v. Cottrell, 125 Pa. 606; Painter v. Snyder, 22 Pa. Superior Ct. 603. The oral testimony adduced did not warrant the finding that the terms of the agreement were varied or that there was any other arrangement than that as clearly stated in the contract. It being, therefore, a bailment by the terms of the writing, and not a sale, the title remained in the bailor, even as against creditors: Rowe v. Sharp, 51 Pa. 26;" Reading Auto. Co. v. De Haven, 53 Pa. Superior Ct. 344-353, Orlady, J.

Neither of the provisions in the lease authorizing the lessee to anticipate payments of rental, and to demand a bill of sale upon payment of the further sum of $1 after compliance with the terms of the lease, changed the character of the agreement from a bailment to a conditional sale; nor does the stipulation for payment of rent in other forms than money affect the bailment: Link M. Co. v. Continental Tr. Co., 227 Pa. 37.

The lease provided that if the lessee made default in performance, the lessor should have the right, without demand, to repossess itself of the machinery and equipment and hold the same discharged from any further liability under the lessee's option to purchase.

Default was made by the lessee, and the lessor became entitled to the machinery and equipment.

The prayer of the petition should be granted.

And now, to wit, June 26, 1924, it is ordered that W. F. Beitler, receiver of the Pine Ridge Coal Company, deliver to Pardee Brothers & Company, Inc., one 100 K. W. motor generator set, two Goodman short wall cutting machines, one general electric six-ton locomotive, leased by said Pardee Brothers & Company, Inc., to said Pine Ridge Coal Company.