# Henry & Co. *versus* Patterson.

1. An agreement between a debtor and his creditors, without consideration and not under seal, by which they agreed to give him "an extension for one year during which they would not obtain judgment against him or molest him by legal proceedings or issue execution against his property," was a simple agreement of forbearance for one year, and as between the debtor and his creditors it was not binding.

2. In all compositions, the creditors are moved by some advantage to be obtained in a distribution of the property of the debtor, or by fixed payments to be made securing to each a certain proportion of his assets.

3. The agreement was not signed by all the creditors; one who signed issued an execution before the end of the year and bought the debtor's goods. The writ and sale were not invalid.

4. An owner of machinery agreed to sell it to another upon his paying a certain sum, to be paid by instalments, and leased him a mill in which it was; this did not pass the title to the vendee.

5. After the vendee had paid several instalments, his "right, title and interest" in the machinery were sold, at the *sheriff's office*, the goods remaining in the mill. If the property was advertised so as to give an opportunity for inspection, the sale was not void.

[Henry v. Patterson.]

February 28th 1868. Before THOMPSON, C. J., STRONG, AGNEW and SHARSWOOD, JJ. READ, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 348, to January Term 1867.

This was a feigned issue under the Sheriff's Interpleader Act, in which Robert Patterson was the plaintiff, and T. Charlton, Henry and Thomas Stillman, trading as Henry & Co., were the defendants. The property, the subject of the claim, had been sold by the sheriff as the property of Isaac B. Hughes.

On the trial, before Sharswood, P. J., the plaintiff gave in evidence a judgment in his favor against Hughes, recovered April 21st 1866, for $6205.14; a fi. fa.,—to which the sheriff returned, "Levied upon the right, title and interest of the defendant in and to the following enumerated machinery at the Globe Mills, on Germantown Avenue below Girard Avenue, April 21st 1866, viz. (specifying the machinery). And sold the same, on May 7th 1866, for the sum of $6500."

Also a judgment by confession, May 5th 1866, in favor of the plaintiff against Hughes for $35,780.38, a fi. fa. on which Hughes's personal property was levied on and sold, May 21st 1866, for $5620. The plaintiff proved by the sheriff's deputy that the machinery at the Globe Mills was sold at the sheriff's office to the plaintiff. On cross-examination, the witness said he sold simply the right, title and interest of Hughes; that he received specific instructions *so to* sell from the plaintiff's attorney; that he gave no possession under the sale.

The plaintiff further proved that the sale of the 21st of May, was of property at the Jefferson Mills in West Philadelphia.

The sale was made at the sheriff's office to the plaintiff. These goods at the time of the levy were in the possession of Hughes. On cross-examination the witness stated that he made a levy on the goods at Jefferson Mills under an execution at the suit of the defendants against Hughes, and found them in the same place as when he levied for the plaintiff; he also made a levy on goods at the Globe Mills under the defendants' execution.

The plaintiff gave evidence by Elias Dickens that he sold machinery at the Globe Mills to Hughes, on August 1st 1864, for $23,000, which was to be paid for, $10,000 cash, and $1000 per month till paid; the machinery to remain in Dickens's possession till all was paid for. Hughes paid the $10,000 and $1000 per month for some time. In August 1865, Hughes owed Dickens $22,000. Hughes then reduced the amount and agreed to pay $1400 per month for rent of the mills, &c., and the $1000 monthly instalments, and went into possession on the 1st of August. Hughes always paid the rent to Dickens, and Dickens to the owner of the mill. On the 21st of April 1866, Hughes owed Dickens something more than $10,000; he then sold the

[Henry *v.* Patterson.]

machinery to the plaintiff, and gave him possession. There was evidence also of Hughes being in possession until the sale to the plaintiff.

The plaintiff having rested, the defendants called a witness by whom they proposed to prove that "his father, John Brown, was, in August 1865, a creditor of Joseph B. Hughes; that Mr. Hughes presented to his father, for the purpose of soliciting his signature to it, an agreement between Mr. Hughes and his creditors, dated the latter part of August 1865, by which they agreed to give him an extension for one year, during which time they would not sue him, obtain judgment against him, molest him by legal proceedings or issue execution against him or his property; that this paper was signed first by the plaintiff and also by the defendants, and delivered to Hughes, or was in his possession. And in addition to prove that that agreement was fully carried out by all the signers to that paper except Patterson, and that the paper has been lost."

The defendants then gave evidence of the loss of the paper. The plaintiff objected to the offer, which was rejected, and a bill of exceptions sealed.

The defendants asked the court to charge the jury: "That if they find that Dickens sold the machinery at the Globe Mills to Hughes, who took possession, and paid $13,000 on account of the same, and that the plaintiff or his attorney, whilst Hughes had such possession, instructed the sheriff to levy his fieri facias on the right, title and interest of Hughes in the said machinery; and the sheriff did so levy, and sold the same at the sheriff's office, and not where the machinery was—such levy and sale were illegal and fraudulent in law, and thereby the plaintiff acquired no title to the machinery, which he can maintain in this case." The judge refused so to charge.

There was a verdict for the plaintiff. The defendants took a writ of error, and assigned for error the rejection of their offer of evidence, and the refusal of the court to charge as requested.

*G. Junkin*, for plaintiffs in error.—The question is, had Patterson a right to levy and sell the property as against Henry & Co.: Hoskin *v.* Woodward, 9 Wright 42. Patterson's conduct was a fraud under the agreement: Knight *v.* Hunt, 5 Bing. 432; Chitty on Cont. 685, 686; Crawley *v.* Hillary, 2 M. & Sel. 120; Steinman *v.* Magnus, 11 East 390; Cockshott *v.* Bennett, 2 T. R. 763; Leicester *v.* Rose, 4 East 372; Patterson *v.* Boehm, 4 Barr 507; 1 Story's Eq. § 378; Forsythe on Compositions, Chap. X. pp. 104*–116*; Addison on Contracts 139*; Ex parte Sadler, 15 Ves. 52; Britten *v.* Hughes, 5 Bing. 466; Took *v.* Tuck, 4 Id. 224; Howden *v.* Haigh, 11 Ad. & El. 1033; Breck *v.* Cole, 4 Sandf. 29; Carnell *v.* Shreder, 4 Ed. Smith 466; Byles on

[Henry v. Patterson.]

Bills 186, 101–2; Spurret v. Spiles, 1 Atk. 105; Turner v. Hoole, Dow. & Ryl. N. P. R. 27; Ward v. Bird, 5 C. & P. 229; Gibbon v. Russell, 2 Ph. R. 390.

Patterson is estopped by his acts: Pickard v. Sears, 6 Ad. & El. 475; Trescott v. Davis, 4 Barb. 495; Rensalaer v. Kearney, 11 How. 297; Calder v. Chapman, Leg. Int., Jan. 18th 1867, 2 Smith's Lead. Cases 705, 723; Lawrence v. Brown, 1 Seld. 394; Cowles v. Bacon, 21 Conn. 451; Kenney v. Farnsworth, 17 Id. 345, 355; Roe v. Jerome, 18 Id. 138–444; Otis v. Lee, 8 Barb. 102; Dezell v. Odell, 4 Hill 215; Plumb v. Cattaraugus, 18 N. Y. 392; Jackson v. Waldron, 13 Wend. 178.

The possession of the property continuing in Hughes the title was in him as regards his creditors: Martin v. Mathiot, 14 S. & R. 214; Jenkins v. Eichelberger, 4 Watts 123; Clow v. Woods, 5 S. & R. 279; Rose v. Story, 1 Barr 190; Babb v. Clemson, 10 S. & R. 428; Young v. McClure, 2 W. & S. 150; Freeman v. Caldwell, 10 Watts 10; Welsh v. Bell, 8 Casey 17; Wood v. Vanarsdale, 3 Rawle 401; Lowry v. Coulter, 9 Barr 349; Duncan's Appeal, 1 Wright 500; Linton v. Commonwealth, 10 Id. 294; Allentown Bank v. Beck, 13 Id. 394; Trovillo v. Tilford, 6 Watts 468; Gibbs v. Neely, 7 Id. 305; Ricketts v. Unangst, 3 Harris 90; McMichael v. McDermott, 5 Id. 353.

The sheriff's sale away from the property was illegal: Lynch v. Commonwealth, 6 Watts 495; Bakewell v. Ellsworth, 6 Hill 484; Teft v. Barton, 4 Denio 171; Linnendale v. Doll, 14 Johns. R. 222; Cresson v. Stout, 17 Id. 116; Shadon v. Super, 14 Id. 352; Haggerty v. Wilber, Id. 287; Beekman v. Lansing, 3 Wend. 446.

*J. C. Gowen*, for defendant in error.—There was no binding agreement to prevent Patterson from doing as he did: Reay v. Richardson, 2 Cr. M. & R. 422; Lewis v. Jones, 4 B. & C. 506; Steinman v. Magnus, 11 East 390; Good v. Cheeseman, 2 B. & Ad. 328; Wood v. Roberts, 2 Starkie 368.

As to fraud: Robertson v. Robertson, 9 Watts 32; Geiger v. Miller, 12 Harris 109; Jackman v. Ringland, 4 W. & S. 149; Barnet v. Dougherty, 8 Casey 371; Tuck v. Tooke, 9 B. & C. 437; Wilson v. Ray, 10 Ad. & Ell. 82.

As to estoppel: Pickard v. Sears, 6 Ad. & Ell. 475; 2 Parsons on Contracts 220; Thimbleby v. Barron, 3 M. & W. 210; Dow v. Tuttle, 4 Mass. 414; Chandler v. Herrick, 19 Johns. 129; Berry v. Bates, 2 Blackf. 118; Dezell v. Odell, 3 Hill 215; Patterson v. Lytle, 1 Jones 53; Hill v. Epley, 7 Casey 331; Brubaker v. Okeson, 12 Id. 519; Commonwealth v. Moltz, 10 Barr 531.

The sheriff's sale was regular: Welsh v. Bell, 8 Casey 12.

[Henry *v.* Patterson.]

The opinion of the court was delivered, March 16th 1868, by

Agnew, J.—The true question in this case is, whether the rejection of the evidence offered by the defendants did them any substantial injustice.    It did not, unless it would have divested the title of Patterson to the machinery under his purchase at sheriff's sale, or would have avoided it as against the execution of a creditor who was a party to the paper stated in the offer.    We do not perceive that this would have been its effect.    Patterson had a valid and regular judgment and execution against Hughes, upon which he levied and sold the interest of Hughes, whatever it was, in the machinery in question.    Hughes interposed no objection, and the sale was regularly made by the sheriff under the writ.    As between Hughes and Patterson it cannot be pretended that title did not pass.    No consideration moved from him to Patterson to stay proceedings, and he made no application to the court to arrest the sale or set aside the execution.    Patterson therefore acquired Hughes' title, unless the sale on his writ was a fraud on the rights of the creditors signing the paper, or he is estopped by it from setting up his title against the execution of Henry & Co.

What, then, was the effect of the paper stated in the rejected offer on the title of Patterson?    The paper was made upon no consideration moving from Hughes, and imported none by reason of a seal.    It is admitted it was not signed by all the creditors, and it may be conceded, though not stated in the offer, that the offer would have been followed by proof of an understanding among the creditors that each one signing was to be considered bound by the paper on its being signed by a specified number. The paper was a simple agreement for forbearance for one year. As between Hughes and the creditors it was not binding, there being no consideration.    He could maintain no action upon it, nor make it a valid promise to enable him to stay an execution: Johnston *v.* Thompson, 4 Watts 446; Zeibert *v.* Grew, 6 Whart. 404; United States *v.* Simpson, 3 Penna. R. 437; Rhoads *v.* Frederick, 8 Watts 448; Bieber *v.* Beck, 6 Barr 198.    It has been likened to a composition deed.    But it has no such resemblance. In all compositions the creditors are moved by some advantage to be obtained in a distribution of property or money by the debtor, or by fixed payments to be made by him securing to each a certain proportion of his assets.    But this paper conferred no advantage upon them, and was wholly for the advantage of the debtor, leaving them at the end of the period of forbearance just where its beginning found them.    The utmost that can be said of the paper as between the creditors is, that it implied mutuality of forbearance among them, and therefore that one could obtain no advantage over another by its breach.    Whether the mutuality said to be so implied by the common agreement to forbear might give a right of action by those who do forbear against those who do not,

[Henry v. Patterson.]

or whether the fruits of execution shall be held in trust by those who do not forbear for those who do, are questions we do not now undertake to solve; but that now before us is whether the breach of Patterson's agreement to forbear prevented title from passing under the sale upon his execution, or estops him from setting it up. The sale was made under a valid and regular judgment and execution for an honest debt. It was not made to hinder and delay other creditors, but to collect the debt due to himself. Now, clearly the sale thus made passed all of Hughes's title to the property, unless the agreement between the creditors vested in them some title or interest in the property in law or equity. But clearly it was not the purpose of the agreement to vest in the creditors any interest in or claim to the property whatever. It left the title of Hughes where it was, and its utmost effect was to bind the creditor from touching it for the period of forbearance. But a breach of the agreement did not invalidate the writ and sale which were permitted to run their course to a final completion. The creditors lost no estate or interest in the property by the sale, but each lost only the bare possibility of having the first execution in the hand of the sheriff at the end of the time of forbearance. If they had any interest it is plain it must have been one that was joint or common to all, and to no one exclusively; and yet all that has been claimed as their right is a scramble for the first levy at the end of the year, while as to that *non constat* that Patterson might not have been foremost in the race. Henry & Co. now claim to be foremost, and therefore to have a right to sell the property a second time for their individual benefit. But if the agrement was binding among the creditors, what right have Henry & Co. to its exclusive benefit? If binding, a right of action arose to all the creditors alike when Patterson broke it, or to claim from him their proportions of the sum realized by the sale. The breach and the sale preceded the execution of Henry & Co., and the rights of the creditors must have then vested in equity. It is difficult, therefore, to see how Henry & Co. can make a resale of the property for their own benefit. This settles the question, for the controversy here is between the execution of Henry & Co. and that of Patterson, which had been finally executed by a sale of Hughes' interest before Henry & Co. had intervened. The title to the property therefore passed by the sale into Patterson; whether for himself, or for himself and others, is not now material.

In view of the evidence, it was not error to refuse the defendant's point. The proof showed that Hughes was but a bailee of the machinery in the Globe Mills under an agreement for a purchase when he should pay the purchase-money. According to the testimony of Dickens, the former owner, he never parted with his title, and made no conditional sale, but merely leased or bailed

[Henry v. Patterson.]

the machinery to Hughes for use, agreeing to sell only on receipt of the purchase-money.   According to Rowe *v.* Sharp, 1 P. F. Smith 26, and the authorities there cited, this was but a bailment which vested no title in Hughes that could be levied and sold to the prejudice of Dickens's title.   Patterson, by his purchase of Dickens, became the owner of the machinery.   Hughes in fact had no title but a bare possession by bailment with a right to acquire title only on payment of the balance of the price to be paid.   Had Patterson actually levied upon and sold the machinery, he would have endangered his own title to it.   He was justified therefore in making his levy upon the mere claim of Hughes selling it as such.   The sheriff could not seize the property or transfer the possession without the consent of Patterson.   There is no complaint that the property was not duly advertised, or that it was sold privately so as to prevent competition.   The only interest the other creditors of Hughes could have was in the notoriety and fairness of the sheriff's sale, in order that Hughes's interest should bring a full price.   This has not been attacked.   If properly advertised, the machinery could be inspected as well as real estate which is often sold by sheriffs, trustees and others making judicial sales, at some public place rather than upon the premises. We cannot say therefore that the sale was void by reason of its being made at the sheriff's office.

Upon the whole, we perceive no error, and the judgment is affirmed.