## Francis A. Hamilton et al., Trading as Brown Bros. & Co., Appellants, v. Jas. H. Billington.

[Marked to be reported.]

*Bailment—Sale—Contract.*

Where a person receives goods under an agreement, by which he is to
keep them during a certain period, and if within that time he pays for
them he is to become the owner but otherwise he is to pay for the use of
them, he receives them as a bailee, and the property in the goods is not
changed until the price is paid.

*Bailment—Title—Letters of credit—Bills of exchange—Execution.*

A dealer in bicycles applied to plaintiffs, bankers, for letters of credit to
purchase bicycles abroad.   The letters were sent directly to the parties in
England, who shipped the goods, got the bills of lading and consular in-
voices, which were sent to plaintiffs' London house, accompanied by the
draft and invoices.   The papers were accepted by the London house, and
the goods were shipped to plaintiffs.   Plaintiffs paid the drafts and gave
the bills of lading to the dealer, who signed a receipt by which he agreed
to hold the goods in trust for plaintiffs, and as their property, with liberty
to sell the same for their account, and to hand the proceeds to them to
apply against their acceptances and for the payment of any other indebt-
edness of the dealer.   *Held*, that the dealer took no title in the goods which
would render them liable to execution for his debts.

Argued March 28, 1894. Appeal, No. 247, Jan. T., 1894, by plaintiffs, from judgment of C. P. No. 3, Phila. Co., June T., 1892, No. 1028, on verdict for defendant. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL; JJ. Reversed.

Sheriff's interpleader to determine ownership of certain bicy cles taken in execution as property of T. Henry Sweeting. Before GORDON, J.

The facts appear by the opinion of the Supreme Court.

Binding instruction for defendant was given.

Verdict and judgment for defendant. Plaintiffs appealed.

*Error assigned* was above instruction, quoting it.

*John G. Johnson, Frank P. Prichard* with him, for appellants.—This case is one of a class of cases in which one who has had no previous possession receives such possession by virtue of a contract with one who retains the title. In such cases the mere fact of possession is not even evidence of fraud, and the only question is whether the transfer was really a transfer of title or only of possession.

A person having a special property may employ as bailee one having a reversionary ownership: Clark v. Iselin, 21 Wal. 360; White v. Platt, 5 Denio, 269; Moors v. Wyman, 146 Mass. 60; Kellogg v. Tompson, 142 Mass. 79.

No creditor in the present case could have been misled unless, indeed, he had assumed, what he had no right to assume, that all property coming into possession of Sweeting came into his hands as owner and not as bailee. No policy of the law, therefore, forbade the transaction, nor did it fall within any of the cases in which it has been held that the rights of the creditors are impaired: Rowe v. Sharp, 51 Pa. 26; Moors v. Kidder, 106 N. Y. 32; Clark v. Jack, 7 Watts, 375; Stoddart v. Price, 143 Pa. 537.

*Amos Briggs,* for appellee.—Whenever it appears from the contract between the parties, that the owner of personal property has transferred the possession thereof to another, reserving to himself the naked title thereof, solely for the purpose of securing payment of the price agreed upon between them, the

contract is necessarily a conditional sale and not a bailment, and while it is perfectly good between themselves it is worthless as to creditors: Forrest v. Nelson, 108 Pa. 481 ; Thompson v. Paret, 94 Pa. 280.

This qualified property was liable to execution by the creditors of Sweeting: Meyers v. Prentzell, 33 Pa. 482; Stewart v. Wilson, 42 Pa. 450.

In Moors v. Wyman, 146 Mass. 60, the question was whether an assignee for creditors had a better claim to the property in contention than the assignor had.  Of course it was held that he had not, as neither the rights of bona fide purchaser nor of execution creditors were involved.

In Moors v. Kidder, 106 N. Y. 32, Swain, who answers to Sweeting, here obtained the bill of lading for the shellac to enter it at the customhouse, and warehouse it in the name of Kidder, Peabody & Co., and return the warehouse receipt.  Instead of doing this, Swain fraudulently entered the shellac in the name of his broker and borrowed money on the certificate of entry.  It was held that Kidder, Peabody & Co.'s title in the shellac was not divested.

The extent to which these last two cases go is that parties who claim through the action and conduct of intermediaries acquire no greater title than the intermediaries possessed.

OPINION BY MR. JUSTICE GREEN, July 12, 1894:

In all the cases which have come before us presenting the question which appears on this record, we have referred ourselves to the contract of the parties, and upon its interpretation we have adjudged the rights of the parties litigant.  If the transaction was a conditional sale, whether in form or in substance, we have held the title in the vendee, and therefore subject to the claims of his creditors, but if it was a bailment, we have held the title in the bailor, and not subject to any claims of the vendee's creditors.  The cases are so numerous that it will be desirable to select only a few of such as are representative in their character.

Thus in Myers v. Harvey, 2 P. & W. 478, which was a case of lease of farming stock to a tenant in possession with compensation for its use, and a sale to the tenant upon payment of a fixed sum, GIBSON, C. J., said: "As it appeared on the evi-

dence the case seemed to be that of a bailment, with a super-added agreement to vest the title in the bailee when he should pay a sum certain; and such an agreement is clearly consistent with public policy. No facility to fraudulent dealing is afforded by it, that is not-afforded, in the same degree, by a naked contract of bailment. Such a transaction includes two distinct but consistent contracts, the one taking effect, if at all, when the other is spent. The contract of bailment preserves the ownership of the bailor during the particular relation created by it, and the contract of sale, which supersedes it, transfers the title as soon as it is called into action, by payment of the price."

This is a distinct declaration of the dual operation of such a contract. The bailment is operative to fulfill its proper function, and it is subverted by the happening of the event which brings about a sale, and both are consistent and may stand together as part of the same contract relation.

Following this principle the case of Rowe v. Sharp, 51 Pa. 26, was decided. The ultimate object there was a sale, but a preservation of the title in the grantor with possession in the grantee was desired and accomplished, until, by the payment of the full consideration, the provision for a sale was brought into action. The contract there was a lease of two billiard tables for nine months, upon payment of definite sums for the use of the tables, and upon the whole amount being paid a bill of sale was to be executed transferring the title. We sustained the contract in both its aspects, and declared it to be a bailment for use of the tables with provision for sale in case of the payment of the price. This is what was said, AGNEW, J. : " That a sale of the billiard tables was contemplated in the lease between Sharp and Goff of the 16th of November, 1865, is manifest in the writing itself, as well as from the other evidence in the cause. But it is the character of the sale which must determine when the title vested. The bill of sale of the 13th November, 1865, was not signed, and before Sharp, the manufacturer, parted with his possession, he had a right to dictate the terms of its transfer. He lived in the city of New York, and the tables were to be taken by Goff into Pennsylvania. The article of lease, as it is called, was the final act of the parties, executed, as its own provisions show, before Sharp had

parted with his control.   By its terms it is clearly a bailment for use (inaccurately termed a lease), with a provision for a sale in case the price of the tables should be fully paid.   The possession was delivered to Goff upon the express terms that he was to take the tables to his place of business in Pennsylvania, keep them, and not remove them without Sharp's written consent, and would surrender them at the end of nine months, or sooner, on Goff's failure to pay the installments as they fell due; and a title or bill of sale was only to be made on full payment of the price.   The transaction is clearly a bailment of the possession, with an agreement for a future sale conditioned on the payment of the price.   According to the authorities this is a valid contract, and can be enforced even against creditors."

Here also the purpose of the parties was to effectuate a sale, in the future, directly to the bailee, who was to have actual possession in the meantime under a different arrangement, and we gave it our sanction as against creditors of the bailee because of the contract.   In other words although the intent of the parties, and the effect of their agreement, was to vest the title at a future day in the purchaser, he having actual possession in the meantime, yet as the intervening arrangement was upon a valid contract of bailment as between the parties, the title of the bailor was preserved until terminated by compliance with the provision for a sale, at which time that portion of the agreement became operative.

Clark v. Jack, 7 Watts, 375, is another instance where the same doctrine was applied to a future sale, where the intervening bailment was a permission to use the chattel, a library of books.

In Rose v. Story, 1 Pa. 190, we said: " So where one receives goods upon a contract, by which he is to keep them a certain period, and if in that time he pays for them, he is to become the owner, but otherwise he is to pay for the use of them, he receives them as a bailee and the property in the goods is not changed until the price is paid."

A case still closer to the present is Becker v. Smith, 59 Pa. 469, the syllabus of which is as follows: Becker, by articles, sold real estate to Linn and agreed that he should have the use of certain personal property, and might sell materials belong-

ing to Becker on the premises on commission; Linn to deposit the proceeds with a banker named, and when the payments to the banker reached a sum named, Linn was to become the owner of the personal property and materials if any remained; if the sales did not amount to the sum, Linn was to make up the deficiency. *Held* not to be a conditional sale but a bailment.

We said, AGNEW, J.: "Hence the contract provided that the entire stock should be bailed to Linn, to be sold on commission, the new and the old metal to be converted into castings for sale in like manner, and after allowing 25 per cent commission for compensation, storage and sale, the balance to be applied to payment of the judgments. It was only in the event that the $4,250 should be realized by the sales of stock, that the remainder of the stock and other personal property were to become the property of Linn, the other property being delivered to him upon a contract of bailment for use till that event happened. Now, clearly, this was not a mere conditional sale to Linn, but a bailment for legitimate purposes, recognized by repeated decisions as not falling within the principle which subjects personal estate delivered upon a contract of sale, to the execution creditors of the purchaser. . . . In reference to the peculiar features of this contract, to wit, the bailment to sell on commission, and to manufacture and sell, there are two cases directly in point. In McCullough v. Porter, 4 W. & S. 177, it was held that an agreement to furnish goods to an insolvent to be sold at invoice prices, he returning the invoice price after sale to the consignors, and retaining all above that sum for the support of himself and family, is a bailment, and the goods are not subject to the executions of the insolvent's creditors." The other case referred to is King v. Humphreys, 10 Pa. 217. Proceeding, AGNEW, J., further said: "The delivery of the stock on hand for sale on commission, and of the metal to be converted into castings also to be sold on commission, and the proceeds of the sales deposited with a banker for the purpose of paying off the judgment, was clearly a bailment only; and the property thus bailed was not subject to the executions of Linn's creditors."

We may now pause to consider the character of the contract under which the present contention arises. Sweeting, a dealer in bicycles, applied to Brown Bros. & Co. for letters of credit

to purchase bicycles abroad. The letters were sent directly to the parties in England, who shipped the goods, got the bills of lading and consular invoices, which were sent to the London house of the plaintiffs, accompanied by the draft and invoices, which were drawn at three months. The only witness in the case, Dawson, plaintiffs' manager, testified: "These papers were accepted by our London house, and the goods were shipped to us here as our property, and we delivered them to Mr. Sweeting upon his signing the trust receipt as we call it." The goods were shipped to the plaintiffs, the bills of lading made to them. This of course gave them the property in the goods which could only be obtained by the surrender of. the bills at the custom house. The plaintiffs paid the drafts drawn on them for the price of the goods at maturity. Before surrendering the bills of lading to Sweeting he signed the trust receipt in question, containing the following provision: "Received from Brown Brothers & Co. the following goods and merchandise, their property, specified in the bill of lading per Lord Clive, dated Lpool. May 17 '92, marked and numbered thus (marks omitted), and in consideration thereof $\left\{ {I \atop we} \right\}$ *hereby agree to hold said goods in trust for them*, and as their property, with liberty to sell the same for their account, and further agree in case of sale, to hand the proceeds to them to apply against the acceptances of Brown, Shipley & Co., on $\left\{ {my \atop our} \right\}$ account under the terms of letter of credit No. $\frac{784}{180}$ issued for $\left\{ {my \atop our} \right\}$ account to Brown, Shipley & Co., or Brown Bros. & Co. Brown Bros. & Co. may at any time cancel this trust and take possession of said goods, or of the proceeds of such of the same as may then have been sold, wherever the said goods or proceeds may then be found; and in the event of any suspension, or failure or assignment for benefit of creditors on $\left\{ {my \atop our} \right\}$ part, or of the non-fulfillment of any obligation, or of the non-payment at maturity of any acceptance made by $\left\{ {me \atop us} \right\}$ under said credit, or under any other credit issued by Brown Bros. & Co., or Brown, Shipley & Co., on $\left\{ {my \atop our} \right\}$ account, or of any indebtedness on $\left\{ {my \atop our} \right\}$ part to either of them, all obligations, acceptances indebtedness and liabilities whatsoever shall thereupon, with or without notice, mature and become due and payable. The said goods while in $\left\{ {my \atop our} \right\}$ hands shall be fully insured against loss by fire."

It will be observed that this was not in any event an undertaking on the part of Brown Bros. & Co. to sell the bicycles to Sweeting. He was not to become the owner of them by purchase or in any other way. In this respect the case is far stronger than any of the reported cases in favor of the grantor or bailor. It must also be remembered that Sweeting had no title to the goods and no possession except as derived through and by operation of the trust receipt. He paid nothing for them, he had no right or title to them prior to the trust receipt, and that paper was the only source of any right to the possession or control of them for any purpose whatever. What then was his right under the receipt? Only this. He was to hold the goods in trust for Brown Bros. & Co. as their property, with liberty to sell them for their account and pay over to them the proceeds, to be applied to the payment of acceptances given for the price of the bicycles, and was entitled to credit upon any other indebtedness of his to either of the plaintiffs' firms.

In what conceivable aspect of this contract was Sweeting to become the owner of the goods? Plainly none. His duty was to sell the goods for the account of the plaintiffs, and while he was selling them he was holding them in trust for the plaintiffs. Even his possession was not on his own account but on theirs. The service he was to render was not for himself but for them. Even the proceeds of the sales he made did not belong to him but to them. At the very utmost the contract was but a bailment for sale without any title or ownership of any kind in the bailee in any event. The case is too plain for extended argument. Not a case has been referred to us in which an ownership was held to arise in the bailee upon such a state of facts as this. On the contrary in the following cases the principles and authorities heretofore cited are recognized, affirmed and applied, and in all of them, although an interest as owner was to be acquired by the bailee for use or sale, or lessee or other party ultimately interested, the right of the bailor, lessor or vendor was sustained against the creditors of the other party : Enlow y. Klein, 79 Pa. 488 ; Henry & Co. v. Patterson, 57 Pa. 346 ; Edwards's Appeal, 105 Pa. 103 ; Ditman v. Cottrell, 125 Pa. 6.06.

Judgment reversed and new venire awarded.

See Monjo v. French, below, page 107.