VAUGHAN v. MASSACHUSETTS HIDE CORPORATION.

SMITH v. BROWN BROS. & CO.

(District Court, D. Massachusetts. December 8, 1913.)

No. 214.

BANKS AND BANKING (§ 191*)—ADVANCES TO CUSTOMER FOR IMPORTATION OF MERCHANDISE—TRUST RECEIPTS.

A bank issued letters of credit for the use of a hide importing com- pany in purchasing hides for import; the custom being for the seller to consign the purchase to the bank and draw on its London correspondent for the price with invoice and bill of lading attached. On arrival of the consignment, the bank indorsed the bill of lading to the company, tak- ing a trust receipt by which the company was given the right to have the hides manufactured into leather and to sell the same, but agreed that the leather or its proceeds should be held in trust for the bank for the payment of the amount of the letter of credit and "of any other in- debtedness" to the bank. A receiver was appointed for the company, which had at the time a quantity of leather for sale in the hands of commission merchants, consisting in part of leather procured through

---

the bank, but intermingled with that from other sources, and it had procured advances on the consignments with the consent of the bank. The bank notified the merchants of its claim to the entire proceeds of the leather in their hands, subject to the advances. At that time the company had paid all of its obligations to the bank then due, including those arising from the particular letters of credit with which the leather then with the commission merchants had been purchased, but owed other claims not matured. *Held,* that the bank was the general owner of the leather, subject only to the company's contract right to become the owner by paying the amount due under the letters of credit with which it was purchased and any other indebtedness then due the bank, and that, such payment having been made, the title then passed to the company, free from any claim or lien on account of any indebtedness which might subsequently become due for other purchases.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 726; Dec. Dig. § 191.*]

In Equity. Suit by George C. Vaughan against the Massachusetts Hide Corporation. On exceptions to master's report on petition of Jeremiah Smith, Jr., receiver, against Brown Bros. & Company. Affirmed in part, and disaffirmed in part.

Warner, Warner & Stackpole, of Boston, Mass., for complainant and for defendants Waldron P. Brown and others in petition of Smith, receiver, against Brown.

Ferdinand A. Wyman, of Boston, Mass., for Massachusetts Hide Corporation.

Howard Stockton, Jr., of Boston, Mass., for petitioner in petition of Smith, receiver, against Waldron P. Brown.

BINGHAM, Circuit Judge. The petitioner is the receiver of the Massachusetts Hide Corporation, and brings this proceeding to recover certain funds in the hands of Brown Bros. & Co. as stakeholders, which he claims as a part of the general assets of the corporation. Brown Bros. & Co., on their part, claim the funds as the proceeds of certain property which they say the hide corporation held in trust for them, and which came into its possession under the circumstances hereinafter set forth.

The hide corporation was engaged in the business of importing and selling hides and skins, and financed its importations through Brown Bros. & Co. and other bankers. The practice with regard to importations through Brown Bros. & Co. was as follows:

When an importation was in prospect, the hide corporation applied to Brown Bros. & Co. for a letter of credit, which would be issued entitling the vendor to draw upon Brown Bros. & Co. or their European representative for the purchase price, subject, however, to an agreement of indemnity executed by the corporation, and indorsed by its treasurer individually. The letters of credit that were issued were in the following form:

No. N.                                    Boston, ........ 191...

You are hereby authorized to value on Brown, Shipley & Co., London, at ................. for account of N. ................ for any sum or sums not exceeding in all ........ pounds sterling for ........ cost ..... of merchandise to be shipped to .......... the bills of lading to be filled up to Brown

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Brothers & Company ..................... The shipments must be completed, and the bills drawn within .. months from this date, and the advice of them to Brown, Shipley & Co., London (in duplicate) must be accompanied by bill of lading, with an abstract of invoice indorsed thereon, on receipt of which documents the bills will be duly honored.

And Brown, Shipley & Co., London, hereby agree with the- drawers, indorsers and bona fide holders of bills, drawn in compliance with the terms of this credit, that the same shall be duly honored on presentation at their counting house. Drafts under this credit to contain the clause "Drawn under Credit No. N. .....," dated Boston, ...... 191......

For £ .................... The user of this credit will please send invoice properly certified and B/L by the vessel, under cover·to .....

[Signed]   Brown, Shipley & Co.

The form of indemnity agreement executed by the corporation and indorsed by its treasurer was as follows:

Received the letter of credit, of which the annexed is a copy for ................. pounds sterling, in consideration whereof .......·hereby agree with Messrs. Brown, Shipley & Co. and with Messrs. Brown Brothers & Co., respectively, to provide, previous to the maturity of the bills drawn in virtue of said credit, sufficient funds in cash or in satisfactory bills on London, at not exceeding sixty days' sight, indorsed by ...................... to meet the payment of the same, together with a commission of one-half of one per cent. on drafts drawn at sight to sixty days or two months, three-quarters of one per cent. on drafts drawn at ninety days or three months, one per cent. on drafts drawn at four months, and one and one-half per cent. on drafts drawn otherwise.

It is understood that moneys paid to Brown Brothers & Co. shall be taken as a payment without recourse, and that in all settlements arising under this credit, the pounds sterling shall be calculated at the current rate of exchange at the time of such settlement.

It is further understood that each draft is to be settled to a point, with commission as above, and interest adjusted in a net rate of exchange at the time of· payment. In the event, however, of settlements not being so made to a point, that Messrs. Brown, Shipley & Co. are to furnish their account current semiannually, charging interest at the rate of five per cent. per annum, or at the current rate if it be above that.

And ............... hereby recognize and admit the ownership of Brown, Shipley & Co. in, and their right and that of Brown Brothers & Co. to, the possession and disposal of all goods and the proceeds thereof, for which Brown, Shipley & Co. may enter into any engagements in virtue of this credit, as also to the possession of Bills of Lading for and policies of insurance on such goods, until such time as any indebtedness or liability existing as against ................. in favor of Brown, Shipley & Co. or Brown Brothers & Co., under the said credit or otherwise, shall have been fully paid up and discharged, and in the event of either of them hereafter indorsing said goods to ............... for the purpose of sale or otherwise, .......... hereby consent that their right to repossess themselves of the same or any proceeds thereof may be exercised at their discretion. Any proceeds of said goods coming into their hands are to be applied against the expenses of Brown, Shipley & Co., under this credit, or against any other indebtedness of ............... to them or to Brown Brothers & Co., including all expenses incurred by either of them, and commission of sale and guaranty.

This obligation is to continue in force, and to be applicable to all transactions notwithstanding any change in the individuals composing the respective firms parties to or concerned in this contract or either of them, or in that of the user of this credit, whether such change shall arise from the accession of one or more new parties or from the death or secession of any partner or partners.

Confirmation of this credit has been telegraphed through Brown, Shipley & Co., London, at our request and sole· risk.

Dated ......... 191.....

The letter of credit having been procured, it would be sent through the European representative of Brown Bros. & Co. to the vendor, who upon receipt of it would ship the hides by bill of lading to the order of Brown Bros. & Co., and would draw upon them, or their European representative, ˙by London draft with the bill of lading attached. The drafts would be four months' drafts and would be accepted on presentation, to be paid in London at maturity.

Upon arrival of the hides in Boston, the hide corporation would receive from Brown Bros. & Co. the bill of lading, indorsed by them, so that it could clear the goods and obtain possession of them, and as part of the same transaction it would execute and deliver to Brown Bros. & Co. a form of trust receipt, known as Form A, and reading as follows:

A.                              Trust Receipt.

Received from Brown Brothers & ·Co. the following goods and merchandise, their property, specified in the bill of lading, per ..................... dated ................. marked and numbered as follows:

And in consideration thereof $\frac{I}{We}$ hereby agree to hold said goods in trust for them, and as their property, with liberty to sell the same for their account ·or to manufacture and remanufacture the same without cost or expense to them, and we also agree to keep said goods, manufactured product and proceeds thereof, whether in the form of money or bills receivable, or accounts, separate and capable of identification as their property, and hand the proceeds to them to apply against the expenses of Brown, Shipley & Co., and $\frac{my}{our}$ account under the terms of Letter of Credit No. ...... issued for $\frac{my}{our}$ account and for the payment of any other indebtedness of $\frac{mine}{ours}$ to Brown, Shipley & Co. or to Brown Brothers & Co.

Brown Brothers & Co. may at any time cancel this trust and take possession of said goods, or the manufactured product, or of the proceeds of such of the same as may have then been sold, wherever the said goods or proceeds may then be found, and in the event of any suspension, proceedings in bankruptcy or failure, or assignment for the benefit of creditors on $\frac{my}{our}$ part, or of the nonfulfilment of any obligation, or of the nonpayment at maturity of any acceptance made by $\frac{me}{us}$ under said credit or any other credit issued by Brown Brothers & Co. or Brown, Shipley & Co. on $\frac{my}{our}$ account or on any indebtedness on $\frac{my}{our}$ part to either of them, all obligations, expenses, indebtedness and liabilities whatsoever shall thereupon (with or without notice) at their option mature and become due and payable. The said goods and the manufactured product thereof while in $\frac{my}{our}$ hands shall be fully insured against loss by fire, and the insurance money received for any loss shall be subject to the trust herein contained in the same manner as the goods themselves.

Upon receipt of the bill of lading, the hide corporation cleared the hides, and either sold them or sent them to a tanner, and when tanned consigned them to a commission house for sale, together with other leather not imported through Brown Bros. & Co., but which was the property of the corporation. After the leather was delivered to the commission merchants, the corporation would from time to time obtain advances from them on the leather so delivered. This was done with the consent of Brown Bros. & Co., and it was understood that the commission merchants should reimburse themselves for the advances and expenses from the general proceeds of leather sold.

In the particular transactions out of which the funds in question

arose the hides, thus imported through Brown Bros. & Co. and other bankers, were tanned, and the leather was sent to the following commission merchants for sale, viz., Converse & Co., Grey, Clarke & Engle Co., Brown & Fiske, and Pfister & Vogel Co.; and all these merchants made advances to the hide corporation on the leather sent to them, with the consent of Brown Bros. & Co.

September 6, 1910, Brown Bros. & Co. sent letters to these commission houses, claiming all the leather held by them for the hide corporation as their property. September 13th the petitioner was appointed receiver of the hide corporation. September 19th the receiver and Brown Bros. & Co. entered into an agreement, whereby the above-mentioned commission houses were to pay over any balances due the hide corporation on their books to Brown Bros. & Co., as stakeholders; and pursuant to this agreement sums aggregating $14,849.29 were so paid to Brown Bros. & Co., being the balances remaining in the hands of the commission merchants after satisfying their advances and expenses. The period of time during which transactions of this kind were carried on between the hide corporation and Brown Bros. & Co. was about a year and a half. On September 6, 1910, the date on which Brown Bros. & Co. notified the consignees of their claim to the funds in question, the hide corporation had met all its obligations to Brown Bros. & Co. that were then due, and all obligations with respect to the particular letters of credit under which the leather was imported, the proceeds of which are sought to be recovered in this proceeding. But on September 6, 1910, there was an outstanding draft which would become due at a later day.

By agreement of parties a special master was appointed to hear and determine the issues of law and fact in the case, his findings of fact to be final; and the case is here now on exceptions by both parties to his report.

The findings and rulings of the master are in substance that the title to the leather imported through Brown Bros. & Co. was in them as general owners, subject to an equitable or contract right in favor of the hide corporation; that the trust receipts issued by Brown Bros. & Co. are valid as against the receiver; that the fact the particular drafts under which the leather was imported were paid at maturity, and all other obligations of the hide corporation to Brown Bros. & Co. that had matured had also been paid, had no effect on Brown Bros. & Co.'s rights in the proceeds of the leather under the trust receipts; and that, although the leather imported through Brown Bros. & Co. with other leather belonging to the hide corporation had been pledged by the hide corporation with the consent of Brown Bros. & Co. to the commission merchants for advances and expenses made and incurred, so that the balances could not be identified as the proceeds of the leather imported through Brown Bros. & Co., nevertheless Brown Bros. & Co. were entitled to these balances under the principles of subrogation.

I am of the opinion that the title to the leather was in Brown Bros. & Co. as general owners, subject to a contract right in favor of the hide corporation, and that the trust receipts are valid as against the receiver.

"The decisions are so numerous, and by so many courts, to the effect that when a commercial correspondent advances money for the purchase of property, and takes possession, either actual or symbolical, he becomes the owner thereof, even when the advancement was made and the property was purchased at the request and for the ultimate use and profit of another, and there is an agreement to transfer title to that other upon the performance of conditions precedent, and ownership was taken solely for the protection of the advancement, that such may be said to be the established rule." New Haven Wire Co. Cases, 57 Conn. 352, s. c., 18 Atl. 266, 5 L. R. A. 300; In re Mulligan (D. C.) 116 Fed. 715; Dows v. Bank, 91 U. S. 618, 23 L. Ed. 214; Moors v. Wyman, 146 Mass. 60, 15 N. E. 104; Moors v. Drury, 186 Mass. 424, 71 N. E. 810; Brown Bros. v. Billington, 163 Pa. 76, 29 Atl. 904, 43 Am. St. Rep. 780; Morrs v. Kidder, 106 N. Y. 32, 12 N. E. 818; Bank v. Logan, 74 N. Y. 568; Barry v. Boninger, 46 Md. 59.

In this case Brown Bros. & Co., by their acceptance of drafts through their English correspondents drawn in pursuance of letters of credit which they had issued to the hide corporation, in effect purchased and paid for the hides with their own money. By so doing, and by taking the invoices and bills of lading for the same in their own name in pursuance of the agreement, they became absolute owners thereof; and this was so notwithstanding the fact that they were under obligation to sell the hides to the hide corporation upon the performance by the latter of its agreement. They could have sold the hides and given title to a third person, leaving the hide corporation to its action for damages for breach of contract to deliver to it. They were in every essential view the general owners, and possessed the rights necessarily attending such ownership. Although they became owners, it was for the sole purpose of obtaining their commission and the highest security possible for their advancements, and their ownership was subject to an agreement that their property in the hides should cease upon the performance of certain conditions precedent upon the part of the hide corporation. This is apparent from the provision in the indemnity agreements executed by the hide corporation upon receipt of the letters of credit in which it stipulated that we "recognize and admit the ownership of Brown, Shipley & Co. in, and their right and that of Brown Bros. & Co. to, the possession and disposal of all goods and the proceeds thereof, for which Brown, Shipley & Co. may come under any engagements in virtue of this credit......until such time as any indebtedness and liability existing as against (us) in favor of Brown, Shipley & Co. or Brown Bros. & Co., under the said credit or otherwise shall have been fully paid up and discharged."

The fair meaning of this indemnity contract, when read in connection with the letter of credit and trust receipt, is that Brown Bros. & Co. bound themselves to pay for the hides, and, upon the performance of conditions precedent by the hide corporation, to transfer title to it. By the trust receipt, the hide corporation obtained possession of the hides upon its agreement to hold them in trust for Brown Bros. & Co. and as their property, and subject to their order, with liberty to sell as the property of the bankers, and that in case of sale to keep the proceeds, whether in the form of money, bills receivable, or accounts, separate and capable of identification as their property, and hand the

proceeds to them to apply against the acceptances and for the "payment of any other indebtedness" to the bankers.

Among other requests, counsel for the receiver requested the master to rule:

"That the words 'any other indebtedness' contained in the trust receipt in Form A mean any other indebtedness due at the time the particular letter of credit involved was satisfied."

This request was denied, notwithstanding it was found that all other indebtedness due at the time the particular letter of credit under which the property, the proceeds of which are here in question, was imported had been paid. This request involves a construction of the written instruments embodying the contract under which the goods were imported and suffered to come into the possession of the hide corporation.

In the New Haven Wire Co. Cases, 57 Conn. 352, 18 Atl. 266, 5 L. R. A. 300, the court was called upon to consider the claims of three different bankers to property imported under conditions similar to those here in question. One of the bankers was Brown Bros. & Co., and the contract upon which the shipment was made differed in no material respect, so far as we are here concerned, from the one we are now considering. Their claim is stated on page 389 of 57 Conn., on page 272 of 18 Atl. (5 L. R. A. 300), as follows:

"The applicants, Brown Bros. & Co., made conditional sales and deliveries of nail machines and of rods to the New Haven Wire Company upon conditions as follows: The wire company agreed to hold the nail machines and rods in trust, with liberty to sell the same, and in case of sale to hand the avails as soon as received to Brown Bros. & Co. as security for due provision for the acceptance of Brown, Shipley & Co. of Liverpool on its account noted at foot; and it further pledged to them the machines and rods and the proceeds thereof as security for the payment of any other indebtedness of it to Brown, Shipley & Co. In consideration of the letter of credit issued by Brown Bros. & Co. to it, the wire company agreed to pay the drafts drawn under the letter; it also gave to them a specific claim and lien on all goods and the proceeds thereof for which Brown, Shipley & Co. should come under any engagement in virtue of the letter; also pledged to them the goods and the proceeds thereof as security for any other indebtedness from it to them."

The court then proceeds and holds that:

"The effect of the trust receipt and of the agreement thus recited is that each nail machine and each lot of rods delivered by Brown Bros. & Co. to the wire company remained their property until the latter should repay the acceptance importing its nail machines or the rods; also all indebtedness due at the time of payment of the importing acceptance."

It further says, on page 391 of 57 Conn., on page 273 of 18 Atl. (5 L. R. A. 300):

"It was the understanding and intention of all parties to these agreements that whenever the absolute title to a particular lot of rods so delivered upon conditions should be necessary to the wire company for the profitable conduct of its business, it should then be possible for it to obtain such title; to obtain it, if need be, contrary to the will of the applicants by a sufficient tender. And as it was the expectation of all parties that importation and conditional sales and deliveries would succeed each other to an indefinite point in the future; that for these an overlapping succession of acceptances should come into existence extending to a constantly receding date, it is not within the reasonable interpretation of the contract to say that it contemplated the burdening of each lot of rods with this accumulating indebtedness; nor to

209 F.—43

say that the applicants required from the wire company the payment of acceptances before maturity as a condition precedent to obtaining title to rods which it had paid for. It is rather to be interpreted as permitting it to obtain such absolute title by paying for the rods, and by paying in addition such other indebtedness from it to them as should then be due."

Such seems to be the reasonable construction of this contract, and as a consequence, under the facts found by the master, the money in question belongs to the hide corporation free from any claim of priority on the part of Brown Bros. & Co.

Again, as to the ruling of the master that Brown Bros. & Co. were entitled to the balance of $1,240.06 on the Converse & Co. account; to the balance of $3,134.36 on the Grey, Clarke & Engle Co. account; to the balance of $2,008.26 on the Brown & Fisk account; and to the balance of $6,349.77, less $759.21 on the Pfister & Vogel Co. account—it may be said that, even if the contract is not subject to the construction above placed upon it, this ruling cannot be sustained. The hide corporation was permitted by Brown Bros. & Co. to pledge the hides and their proceeds to the commission merchants (to whom they were consigned for sale) to secure advances made by the merchants to the corporation. Leather imported through other bankers was also consigned and pledged to the same commission merchants by the corporation. No account was kept by the commission merchants showing from what source the hide corporation obtained the leather, and the proceeds of sales were applied by the merchants upon the advances from time to time as the sales were made, without regard to the particular source from which they came. From such circumstances no presumption arises that the advances were paid out of the proceeds of leather derived from one source rather than the other, and the finding and ruling of the master that the balances could not be identified as the proceeds of Brown Bros. & Co. leather is undoubtedly correct; but his ruling that, under these circumstances, Brown Bros. & Co. were entitled on the principles of subrogation to have the proceeds of the leather, derived from sources other than the sale of their leather, first applied to satisfy the advances, is erroneous. The rights of priority of Brown Bros. & Co. over the general creditors of the corporation to funds in the hands of the receiver, or due to him from debtors of the corporation, depend upon whether the whole or any part of the funds can be identified as the proceeds of hides imported through them. As they cannot be identified, their equitable right of priority is lost; and the proceeds having been applied from time to time as the sales were made, no question of the marshaling of assets is presented.

No claim is made by the receiver to the balance of $834.75 on the Hunt Rankin Leather Company account, or to the balance of $1,282.-04 on the R. M. Baker account. These balances are found to be the proceeds of leather imported upon Brown Bros. & Co. letters of credit alone, and it also appears that Brown Bros. & Co. have never been reimbursed for their acceptances under these particular letters of credit.

The master's report is affirmed in part and disaffirmed in part. The parties may present drafts for a decree.